[No. 39188-1-II.   Division Two.   October 26, 2010.]

*In the Matter of the Marriage of* GREGORY L. SMITH, *Appellant,* and TAMMY L. SMITH, *Respondent.*

---

*Christopher Keith Stump* (of *Law Offices of C. Keith Stump*), for appellant.

*David C. Hammermaster*, for respondent.

¶1 QUINN-BRINTNALL, J. — After the trial court denied Gregory Smith's motion to reconsider a domestic relations order (DRO) granting Tammy Sisich,[1] his former wife, part of his retirement benefits, Smith filed this appeal. Finding no merit to his claims of error, we affirm.

## FACTS

¶2 Smith and Sisich married on April 13, 1985, separated on April 26, 1998, and had their marriage dissolved by stipulated decree on May 18, 2000. Smith's attorney withdrew before the decree was finalized.

¶3 The parties agreed to findings of fact stating that their community property included Smith's "rights accrued by virtue of present, past or future employment including but not limited to pension, retirement, profit sharing, reserve vacation, sick leave, insurance coverage, social security benefits and the like," in addition to real property in Utah. Clerk's Papers (CP) at 143-44. The findings added that Smith had no real or personal separate property and that Sisich's disability claim was her separate property. Based on these and the other findings, which were incorporated into the dissolution decree, the court concluded that the distribution of property in the decree was fair and equitable.

¶4 The decree awarded to Smith, as his separate property,

[o]ne-half of any and all rights accrued by virtue of present, past or future employment of the husband including but not limited to pension, retirement, profit sharing, reserve vacation, sick leave, insurance coverage, social security benefits and the like during the length of their marriage;

Any and all property acquired by the husband after the date of separation, April 26, 1998.

CP at 18. The separate property awarded to Sisich included

[o]ne-half (1/2) of any and all rights accrued by virtue of present, past or future employment of the husband including

---

[1] Tammy Smith changed her surname to Sisich when the couple divorced.

but not limited to pension, retirement, profit sharing, reserve vacation, sick leave, insurance coverage, social security benefits and the like for the length of the marriage.

CP at 19. The court maintained jurisdiction to approve DROs relating to the award of pension benefits.[2]

¶5 Smith worked as an air traffic controller with the Federal Aviation Administration during the marriage and for 10 years after the parties separated. He earned benefits under the Civil Service Retirement System until he retired in May 2008. When Sisich's attorney wrote to him shortly thereafter, requesting that he forward half of his retirement checks to Sisich, Smith did not respond. Sisich then moved for entry of a DRO directing the retirement administrator to divide Smith's retirement benefits according to the dissolution decree so she could receive her share directly. Sisich asked the court to employ the "customary formula" that divided the number of months of marriage by the number of months Smith worked, with the result multiplied first by half and then by his monthly pension payment. On October 31, 2008, the court granted the motion and entered a DRO calculating Sisich's share of Smith's retirement benefits according to the formula she suggested.

¶6 Smith moved for reconsideration on November 10. He argued that the court's formula incorrectly included (1) benefits he earned while the parties lived in Utah, a noncommunity property state; (2) benefits he earned in lieu of Social Security; and (3) benefits based on salary increases that occurred after the parties separated. He contended further that an actuary needed to calculate Sisich's share of his retirement.

¶7 Smith then moved to schedule a hearing on his motion for reconsideration or, in the alternative, for relief from judgment under CR 60. Sisich responded that the motion for reconsideration was untimely as well as an

---

[2] A DRO is any order relating to the provision of marital property rights to a former spouse that is made pursuant to a state domestic relations law. 26 U.S.C. § 414(p)(1)(B).

invalid attack on the dissolution decree. The trial court denied Smith's motion for reconsideration because it was untimely and because all retirement benefits earned during the marriage were available for division as set forth in the DRO. The court subsequently filed an amended DRO after adjusting the months of marriage and employment in the formula used to calculate Sisich's share of the retirement benefits.

¶8 Smith appeals the amended DRO and the order denying his motion for reconsideration.

## ANALYSIS

### TIMELINESS OF MOTION FOR RECONSIDERATION

¶9 Smith argues initially that the trial court erred in denying his motion for reconsideration as untimely. Citing CR 59, Sisich responds that the trial court correctly concluded that the motion was untimely because Smith did not note the motion or serve it within 10 days of the DRO ruling.

¶10 With the exception of Sisich's brief discussion of CR 59, neither party cites authority or argument for its position in its appellate brief, referring this court instead to the pleadings in the clerk's papers. Accordingly, we could decline to consider the issue. *See Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 746 n.11, 218 P.3d 196 (2009) (issues relying on incorporated trial court briefing are considered abandoned). Given Sisich's mention of CR 59, however, as well as the fact that the trial court erred in finding the motion untimely, we will address the issue.

¶11 The trial court found Smith's motion for reconsideration untimely because he did not note the motion when he filed it. CR 59(b) establishes the time limits for a motion for reconsideration:

> A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision. The motion shall be noted at the time it is filed,

to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise.

██ ¶12 A party's failure to note a motion for reconsideration for hearing on the day of filing does not render the motion untimely. *West v. Thurston County*, 144 Wn. App. 573, 578 n.1, 183 P.3d 346 (2008); *see also* 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 59 author's cmts. at 497 (5th ed. 2006) (counsel's failure to note the motion for hearing as required by the rule does not render the motion untimely and does not preclude an appeal from the ruling on the motion); *In re Det. of Turay*, 139 Wn.2d 379, 391, 986 P.2d 790 (1999). Moreover, as amended in 2005, CR 59 does not require that the motion for reconsideration be served within the same 10-day time limit that applies to filing the motion. 4 TEGLAND, *supra*, at 496, 504-05. CR 59(b) requires only that the motion be filed, not necessarily served, within 10 days after entry of judgment. 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 59 author's cmt. 17, at 68 (5th ed. Supp. 2010). Smith filed his motion for reconsideration on the 10th day after the DRO was filed. Consequently, his motion was timely under CR 59(b).

¶13 We next address the trial court's alternative basis for denying the motion for reconsideration and Smith's substantive challenges to the amended DRO.

STANDARD OF REVIEW

¶14 In entering the DRO and denying the motion for reconsideration, the trial court necessarily interpreted the property division in the decree and the agreed findings it incorporated. The question here is whether that interpretation was correct.

██ ¶15 We review de novo the language in a dissolution decree and a DRO. *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). When an agreement is incorporated into a dissolution decree, we must ascertain the parties' intent at the time of the agreement. *In re*

*Marriage of Boisen*, 87 Wn. App. 912, 920, 943 P.2d 682 (1997), *review denied*, 134 Wn.2d 1014 (1998). In such a situation, the parties' intent generally will be the court's intent. *Boisen*, 87 Wn. App. at 920. If the language of the decree is unambiguous, there is no room for interpretation. *In re Marriage of Bocanegra*, 58 Wn. App. 271, 275, 792 P.2d 1263 (1990), *review denied*, 116 Wn.2d 1008 (1991). Normally, we are limited to examining the provisions of the decree to resolve issues concerning its intended effect. *Gimlett*, 95 Wn.2d at 705.

██ ¶16 The general rules of construction that apply to statutes, contracts, and other writings also apply to findings, conclusions, and decrees. *Callan v. Callan*, 2 Wn. App. 446, 448-49, 468 P.2d 456 (1970). We read a decree in its entirety and construe it as a whole to give effect to every word and part, if possible. *Stokes v. Polley*, 145 Wn.2d 341, 346, 37 P.3d 1211 (2001); *Callan*, 2 Wn. App. at 449.

BASIS OF APPEAL

██ ██ ¶17 Sisich maintains that this appeal is an untimely effort to modify the dissolution decree, while Smith insists that he is appealing only the DRO and the denial of his motion to reconsider that order. As Sisich maintains, it is too late to appeal the property division in the decree. Although Smith challenged the DRO under CR 60(b) below (he does not discuss this basis for his challenge on appeal), he did not challenge the decree itself under this rule. A property settlement agreement incorporated into a dissolution decree that was not appealed cannot be later modified unless the court finds the existence of conditions that justify the reopening of a judgment. *Byrne v. Ackerlund*, 108 Wn.2d 445, 453, 739 P.2d 1138 (1987); *In re Marriage of Knutson*, 114 Wn. App. 866, 871-72, 60 P.3d 681 (2003) (quoting RCW 26.09.170(1)). Smith does not seek to reopen the judgment but argues only that the DRO misinterprets the language of the dissolution decree. Consequently, this appeal challenges the DRO and not the decree.

INTERPRETATION OF DECREE IN DRO

A. THE DECREE'S DIVISION OF RETIREMENT BENEFITS

¶18 Smith contends that the parties intended to divide only the community portion of the retirement benefits he earned during their marriage and that the DRO incorrectly includes benefits he earned as separate property in calculating Sisich's share. He claims that the property division in the decree is ambiguous and that we must consider extrinsic evidence in determining the parties' intent when they agreed to that division. *See U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569-70, 919 P.2d 594 (1996) (extrinsic evidence may be used to clarify the meaning of words in a contract).

¶19 As support, he cites letters that Sisich's attorney wrote to him and his attorney before the decree was finalized. In one, she characterized Sisich's Department of Labor and Industries settlement as separate property, and in the other she explained that the provision in the decree awarding Sisich half of Smith's retirement benefits was "consistent with the law in this state which classifies retirement accrued during the marriage as community property." CP at 47. Smith argues that these letters show the parties' intent to distinguish between community and separate property acquired during the marriage and to divide only the community property components. Smith also argues that the provision in the decree awarding Sisich half "of any and all rights accrued by virtue of present, past or future employment of the husband . . . for the length of the marriage" is internally inconsistent and conflicts with the provision awarding Smith all property acquired after the date of separation. CP at 19. He contends that the resulting ambiguity should be construed against Sisich because her attorney drafted the decree. *See Holaday v. Merceri*, 49 Wn. App. 321, 325, 742 P.2d 127 (ambiguity in separation agreement incorporated into dissolution decree should be construed against drafter), *review denied*, 108 Wn.2d 1035 (1987).

¶20 We agree with Sisich that Smith's analysis of the decree's shortcomings considers extrinsic evidence at the expense of the agreed findings.[3] *See Callan*, 2 Wn. App. at 449 (decree must be read in its entirety and construed as a whole). Those findings state that Smith has no separate property and include, as community property, Smith's rights to retirement benefits accrued by virtue of present, past, or future employment. The specific provision in the decree implementing that finding grants Sisich half of those rights "for the length of the marriage." CP at 19. These specific statements control over the more general provision awarding Smith all property acquired after the date of separation. *See Adler v. Fred Lind Manor*, 153 Wn.2d 331, 354, 103 P.3d 773 (2004) (courts give greater weight to specific and exact terms than general language); *Diamond "B" Constructors, Inc. v. Granite Falls Sch. Dist.*, 117 Wn. App. 157, 165, 70 P.3d 966 (2003) (where the contract provides a general and a specific term, the specific controls over the general).

¶21 Furthermore, even if we consider Smith's letters, they do not undermine the DRO's interpretation of the decree. The letters show that the parties clearly considered how to characterize their property before finalizing the decree and intended their characterization to be consistent with Washington law. The DRO properly interpreted the decree's award of retirement benefits to Sisich as well as Washington law.

## B. Retirement Benefits Earned during Utah Residency

¶22 Smith contends that he earned retirement benefits during the 58 months of the marriage spent in Utah, a noncommunity property state, and that the portion of retirement he earned while living in Utah was not community property.

---

[3] Sisich argues in passing that these letters are inadmissible hearsay, but she again supports this argument only by referring to her briefing below, so we do not consider it. *See Bldg. Indus. Ass'n*, 152 Wn. App. at 746 n.11.

¶23 Washington accepts the principle that the character of property is determined under the law of the state in which the couple is domiciled at the time of its acquisition. *In re Marriage of Landry*, 103 Wn.2d 807, 810, 699 P.2d 214 (1985); *Rustad v. Rustad*, 61 Wn.2d 176, 179, 377 P.2d 414 (1963). Retirement or pension benefits are deferred income and, as a consequence, benefits that accrue during a term of employment are characterized in the same way as the income earned during that term of employment. *Landry*, 103 Wn.2d at 810. In *Landry*, therefore, the Supreme Court upheld the trial court's characterization of pension benefits earned while the parties lived in noncommunity property states as the husband's separate property. "Separate property retains its separate character when it is brought into Washington, unless it is commingled with community property." *Landry*, 103 Wn.2d at 810.

¶24 *Landry* was the result of the wife's motion to reopen the decree of dissolution under CR 60(b). 103 Wn.2d at 809. Another challenge to the court's inclusion of benefits earned in a noncommunity property state occurred when the husband appealed the dissolution decree in *In re Marriage of Jacobs*, 20 Wn. App. 272, 273, 579 P.2d 1023 (1978). Here, Smith never appealed the agreed finding that included all of his retirement benefits in the list of community property. (Nor did he appeal the inclusion of Utah real property in that list.) Moreover, even if the benefits earned while the couple lived in Utah should have been characterized as Smith's separate property, the characterization of property as either separate or community does not control its distribution. *In re Marriage of Wright*, 78 Wn. App. 230, 236, 896 P.2d 735 (1995). The trial court's primary goal is to ensure a fair and equitable distribution and, even if it mischaracterizes the property, the allocation will be upheld as long as it is fair and equitable. *In re Marriage of Williams*, 84 Wn. App. 263, 269, 927 P.2d 679 (1996), *review denied*, 131 Wn.2d 1025 (1997); *Wright*, 78 Wn. App. at 236. The court concluded in 2000 that dividing all of Smith's retirement benefits was fair and equitable and it is too late for Smith to complain about that division in this respect.

## C. SOCIAL SECURITY COMPONENT

¶25 Smith argues next that because he was not eligible for Social Security benefits, which are the recipient's separate property, the trial court should have calculated and removed the portion of his retirement received in lieu of Social Security before calculating Sisich's share. As support, he cites the following Washington cases.

¶26 Federal law precludes the division of Social Security benefits in a marital property distribution case. *In re Marriage of Zahm*, 138 Wn.2d 213, 219, 978 P.2d 498 (1999). Although a trial court cannot calculate a future value of Social Security benefits and award that value as a precise property offset as part of its property distribution, the possibility that one or both parties may receive Social Security benefits is a factor the court may consider in making its distribution of property. *In re Marriage of Rockwell*, 141 Wn. App. 235, 244-45, 170 P.3d 572 (2007), *review denied*, 163 Wn.2d 1055 (2008). Consequently, the trial court in *Rockwell* properly compensated the wife for the Social Security benefits she would have received but for her federal pension. 141 Wn. App. at 245.

¶27 In his briefing below, Smith cited *Rimel v. Rimel*, 913 A.2d 289 (Pa. Super. Ct. 2006). The *Rimel* court held that a husband was entitled to a Social Security offset against his pension before those pension benefits were divided between the parties. 913 A.2d at 292; *see also Kelly v. Kelly*, 198 Ariz. 307, 309, 9 P.3d 1046 (2000) (in dividing husband's pension benefits as community property, court was required to place a value on the Social Security he would have received had he participated in that system during the marriage, and to deduct that amount from the value of his pension on the date of dissolution).

¶28 As the trial court recognized here, the holdings in *Rimel* and *Kelly* are not yet reflected in Washington law. Characterizing pension received in lieu of Social Security as separate property is not mandatory in Washington, particularly where the parties never suggested that

characterization. To the contrary, the parties here included Social Security benefits "and the like" in their list of community property. As the trial court noted, "[Y]ou can't enter an order telling the Court that this is a community property pension and it's part of an entire dissolution proceeding and then go back and say, no, it's not what we thought it was when we equitably divided the property." Report of Proceedings (RP) (Oct. 31, 2008) at 7. The trial court did not err in considering the total amount of Smith's retirement benefits in calculating Sisich's share.

### D. RETIREMENT BENEFITS EARNED AFTER SEPARATION

¶29 Finally, Smith argues that after he and Sisich separated, he received a considerable pay raise that increased his retirement benefits. He contends that this increase resulted from work and effort made after the separation and should be excluded from Sisich's share of his retirement. He adds that an actuary should calculate this exclusion and determine the community property portion of his pension.

¶30 Pension benefits, as deferred compensation, constitute property rights subject to division by the court. *In re Marriage of Chavez*, 80 Wn. App. 432, 436, 909 P.2d 314, *review denied*, 129 Wn.2d 1016 (1996). But when a spouse continues to accumulate pension benefits following divorce, the trial court should not simply divide the total pension in half. *Chavez*, 80 Wn. App. at 436. The approved method is to calculate the community share of the pension by dividing the number of years or months of marriage by the total years or months of service. This result is then multiplied by the monthly benefit at retirement. *Chavez*, 80 Wn. App. at 436. The *Rockwell* court characterized this as the "time rule method." 141 Wn. App. at 252.

¶31 An award of pension benefits on an as-received basis is to be encouraged because it avoids difficult valuation problems and shares in the risks inherent in deferred income. *Chavez*, 80 Wn. App. at 437. The spouse may share in benefit increases due to higher salary at retirement

because "the prospective increase in retirement benefits due to increased pay after separation is founded on those . . . years of community effort." *In re Marriage of Bulicek*, 59 Wn. App. 630, 638, 800 P.2d 394 (1990); *see also In re Marriage of Hurd*, 69 Wn. App. 38, 46, 848 P.2d 185 (citing *Bulicek* and adding that salary increase received shortly after separation should be presumed to be result of community efforts absent substantial evidence to the contrary), *review denied*, 122 Wn.2d 1020 (1993).

¶32 Smith argues that the time rule method is not appropriate because his retirement is a defined benefit plan based on calculating the number of years worked, specified percentages for different years worked, and the average of his three highest years of income. *See* WASH. STATE BAR ASS'N, WASHINGTON COMMUNITY PROPERTY DESKBOOK § 3.2(5)(a)(v), at 3-47 (3d ed. 2003) (where defined benefit plan bases pensions not just on time but on salary for particular time, pure time apportionment formula is not appropriate and actuary should be consulted). Smith also argues that the traditional formula is inappropriate because, as stated earlier, all air traffic controllers received a significant pay increase after the parties separated, regardless of years of service, and the resulting increased benefits were solely a result of his own work and effort and constitute his separate property.

¶33 These assertions come too late. The parties did not agree to separate Smith's future retirement benefits from the total considered for any reason. And, despite Smith's protests to the contrary, the formula used grants Sisich a proportional interest in benefits earned after marriage that reflects the community effort during the marriage, as the trial court explained:

> And the fact of the matter is that the money that the two of them put into this plan has been sitting there for the period of time that he continued to work, and so she's entitled to an increase on her share just like he's entitled to an increase on his share.

RP (Aug. 22, 2008) at 16-17. The trial court did not err in relying on the approved formula that incorporated Smith's increased retirement benefits after the parties separated into the calculation of Sisich's share of those benefits.

ATTORNEY FEES

¶34 Sisich did not request fees below but argues that she is entitled to fees on appeal under RCW 26.09.140 and RAP 18.1. She contends that she is in financial need and that Smith can afford to pay.

¶35 When a party requests attorney fees on the basis of financial need, she must file an affidavit of financial need no less than 10 days before the date set for oral argument. RAP 18.1(c). Sisich did not comply with this requirement, so we deny her fee request.

¶36 We affirm the trial court's amended DRO and its denial of Smith's motion for reconsideration, and we deny Sisich's request for attorney fees.

HUNT and VAN DEREN, JJ., concur.