IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
) No. 70415-0-I
JACQUELINE E. BERNI, )
) DIVISION ONE
Appellant, )
)
v. )
) UNPUBLISHED OPINION
WILLIAM J. BERNI, )
) FILED: June 30, 2014
Respondent. )
_____ )

2014 JUN 30 AM 10:57
COURT OF APPEALS DIV I
STATE OF WASHINGTON

BECKER, J. — This appeal challenges postdecree rulings interpreting maintenance provisions of a separation contract. We affirm the trial court's determination that the term "earned income" was not intended to include amounts the husband reported on tax returns as gambling winnings. We also affirm the rulings denying the wife's motions for contempt and requests for attorney fees.

On March 24, 2010, William and Jacqueline Berni (Bill and Jaci) executed a separation agreement. The decree dissolving their marriage, entered on March 26, 2010, confirmed the separation agreement. Relevant to this appeal, section 7 of the agreement provided a formula for maintenance:

> In any calendar year through December 31, 2016, in which the
> Husband has earned income in excess of $75,000.00, as reported

on all W-2 forms, 1099s, and Husband's federal income tax return, he shall pay to the Wife as maintenance an amount equal to fifty percent (50%) of his earned income in excess of $75,000.00 (e.g., in a year in which the Husband has earned income in the amount of $125,000, he shall pay maintenance to the Wife in the amount of $25,000). The maintenance obligation as determined under the terms of this subparagraph shall be paid to Wife by the end of February following the calendar year in question. The Husband shall provide the Wife with full and complete copies of all W-2 forms, 1099 forms by the end of February and his federal income tax returns on or before April 16 of each year, through April 16, 2017, and in the event the documents reveal that the Husband did not pay the full amount of maintenance for the prior year in February, the remaining balance, if any, shall be paid in full on or before May 1 of each year. For the purposes of determining the maintenance obligation as set forth herein, the Husband's earned income does not include any amount the Husband may withdraw from a 401(K) Plan or retirement plan, and further does not include any income earned by an individual with whom the Husband may file a joint federal income tax return.

Also pertinent is section 1.13: "both parties shall provide answers to previously asked interrogatories to the other party's satisfaction."

In section 7, paragraph 1 of the separation agreement, Bill agreed to continue spousal maintenance payments to Jaci of $750 per month through 2010. He made these payments. In section 7, paragraph 2, Bill agreed that for any year (through 2016) in which he had an earned income in excess of $75,000, he would make additional maintenance payments of 50 percent of the excess. Bill made some additional payments under this provision, some of them before the due date, but Jaci believed he was understating his earned income. Although the agreement required Bill to provide his income tax returns to Jaci, Bill told Jaci in an e-mail in January 2012 that he would not disclose his 2010 and 2011 returns until he received proof that Jaci had done certain things that he viewed as being her obligation under the agreement.

On March 9, 2012, Jaci filed a motion for an order to show cause and for clarification of the divorce decree. Attaching a copy of the e-mail, Jaci requested enforcement of what she believed were Bill's past due maintenance obligations. She asked the court to find Bill in contempt for violating the income disclosure provisions of separation agreement, to enforce Bill's obligation to provide full and complete copies of his income tax returns, and particularly to require him to provide W-2G forms documenting Bill's gambling winnings.

After a hearing on March 30, 2012, Superior Court Commissioner Jacqueline Jeske ordered Bill to provide "answers to previously asked interrogatories" to Jaci's satisfaction, as contemplated by section 1.13 of the separation agreement. "The court finds no reason for the discovery requests to have been included in the separation contract except to allow for maintenance owed for 2009 to have been addressed under the formula set forth." The commissioner accordingly found that Bill had an obligation to disclose his 2009 tax information, that he had not done so, and that this information was required to calculate maintenance he owed for that year. Bill was ordered to pay $1,500 for Jaci's attorney fees on the motion to enforce. The issue of whether Bill owed additional maintenance for 2009 and 2010 was reserved pending his disclosure of full and complete records for those years. The court noted that there was as yet no issue of noncompliance regarding Bill's income in 2011. Under the agreement, he did not have to provide the tax return until April 2012. The commissioner declined to hold Bill in contempt:

> The lack of clarity or definition of various provisions in the
> agreement and earned income language, in combination with the

3

husband's prior voluntary payments, were considered when determining reasonable fees, along with other appropriate factors. Mr. Berni's unfortunate "tit for tat" approach to providing his 2010 and 2011 returns aside, enforcement is sufficient, without the coercive remedy of contempt, along with clarification, to provide the necessary relief to Jacqueline Berni herein.

Bill moved to revise the ruling that maintenance was due for 2009. Superior Court Judge Laura Middaugh granted this motion on August 3, 2012, and ruled that Bill's maintenance obligation did not begin until 2010. This order was not appealed.

Judge Middaugh's order did not revise that portion of Commissioner Jeske's order that required Bill to "provide the wife, to her satisfaction, all the records not exchanged in discovery through and including March 2010." The order stated, "Wife's counsel will specify within 30 days; Husband must comply with disclosure within 30 days of receipt of specific requests." Between April and December 2012, Bill and Jaci corresponded through counsel about what was required under this order. In April 2012, Bill timely provided his 2011 tax return. In May, he provided his W-2 and W-2G forms for 2010. Jaci requested answers to her previous discovery requests for bank statements, Bill's parents' trust information, cell phone records, credit card statements, tax information for 2009, check registers, and rental applications. Bill responded, but not completely, and portions of the information he provided were not received by Jaci until well after the 30-day deadline.

The information Jaci received from Bill during this time showed that the W-2G forms attached to Bill's tax returns reported $48,322 in gambling winnings for 2010 and $31,806 for 2011. The disclosures also included records from Tulalip

4

Resort and Casino showing transactions where his player's club card was used. Bill had sustained a net loss of $59,963.05 in 2010 and a net loss of $40,320.05 for 2011.

On December 7, 2012, Jaci filed the motions leading to the orders presently on appeal. In a motion to show cause, she requested that Bill be ordered to produce certain financial documents and be found in contempt for failing to comply with Commissioner Jeske's disclosure order and deadlines. She requested that Bill pay $18,521.83 plus interest in spousal maintenance for 2010, and $10,432.00 plus interest for 2011. She calculated these amounts on the assumption that gambling winnings were "earned income" as that term is used in the agreement. Jaci asked that Bill be required to pay $16,120 in attorney fees.

Superior Court Commissioner Julia Garratt heard the matter on January 25, 2013. Jaci argued she was still entitled to all the various financial records she had requested concerning Bill's income in 2009 even though Judge Middaugh had ruled Bill owed no maintenance for 2009. This was so, Jaci argued, because Commissioner Jeske had interpreted section 1.13 of the separation agreement as literally requiring that full disclosure be made "to the other party's satisfaction." Commissioner Garratt did not find the argument compelling:

> But it doesn't make any sense. Why should he have to produce records for 2009 when there's no income that would be produced from that? I mean, we're talking about going back almost four years now. But if no maintenance—I mean, the parties have been divorced for a couple of years, and there's a very specific separation contract that spells out certain affirmative things that are

5

to happen. But if 2009 is off the chessboard, I mean, what's the point?

Commissioner Garratt found that Bill had not failed to comply with Commissioner Jeske's order. Finding of fact 2.1. She also found it was not Bill's obligation to produce documents not specified in the separation agreement. She denied Jaci's request to hold Bill in contempt.

Commissioner Garratt found that "gambling winnings are not considered earned income." Finding of fact 2.6. In her oral ruling, she explained why:

> The IRS [Internal Revenue Service] does not appear to describe it as earned income, and I certainly note that nobody gets rich over slot machines. I guess I can liken it to if somebody sells something on eBay and earns money, it may be reported to the IRS on your tax forms. But if you paid more for the item than you received on eBay, you're not going to pay taxes on that amount of money that you received.
>
> So for the purposes of this hearing, I don't find that gambling proceeds received is earned income. I would certainly assume that there was a great deal of losses as well as gains. But under the circumstances, I'm not finding the gambling winnings to be considered earned income.

Jaci moved to revise Commissioner Garratt's ruling. On March 14, 2013, Judge Julie Spector denied the motion. On the issue of gambling income, Judge Spector commented that Jaci was trying to have it only one way—counting only the winnings but not the losses. For example, she reasoned, if Bill had bet and lost all his money, he would not be entitled to reduce his support obligations according to the amount of his losses. Judge Spector noted she had never seen so much litigation following a divorce. She reminded the parties that it costs a great deal of money to keep coming to court.

6

Jaci appeals. Her primary argument is that the definition of "earned income" under the separation agreement includes gambling winnings. This argument requires interpretation of the separation agreement.

The language of a separation contract in a dissolution decree is reviewed de novo. In re Marriage of Smith, 158 Wn. App. 248, 255, 241 P.3d 449 (2010). The intent of the parties must be ascertained at the time of the agreement. In re Marriage of Smith, 158 Wn. App. at 255-56. Courts should generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504, 115 P.3d 262 (2005). A court may resort to dictionary definitions to ascertain a term's plain and ordinary meaning. State v. Myers, 133 Wn.2d 26, 33, 941 P.2d 1102 (1997).

The agreement does not provide a specific definition of "earned income." We resort to dictionary definitions to determine the plain and ordinary meaning of the term. The term "earned income" has been defined as "income (as wages, salary, professional fees, or commissions) that results from the personal labor or services or an individual." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 714 (2002). Another definition is "money derived from one's own labor or active participation; earnings from services." BLACK'S LAW DICTIONARY 831 (9th ed. 2009). The IRS explains that "earned income" is income generated either by working for someone or by running a business or a farm.[1]

---

[1]http://www.irs.gov/Individuals/What-is-Earned-Income%3F.

Jaci contends that the plain meaning of "earned income" as used in the agreement necessarily includes everything reported on a W-2G form. We disagree. The agreement says "earned income . . . as reported on all W-2 forms." Gambling winnings are reported as "winnings" on W-2G forms, not as income.

Jaci points out that the parties chose to exclude from Bill's earned income any 401(k) withdrawals and any income earned by his spouse. She argues that this context indicates they intended to include gambling winnings in "earned income." Her argument begs the question. Withdrawals from a 401(k) and a spouse's earnings are clearly forms of earned income. It is not clear that money coming into Bill's hands through gambling is "earned income" in any sense, and so the lack of an explicit exclusion does not bring it within the term.

The plain meaning of the term "earned income" is income received in exchange for work. Gambling winnings are a result of chance. They are not paid in exchange for work done or services rendered. Including gambling winnings in the definition of "earned income" would not be consistent with the dictionary definitions of the term.

We conclude the ordinary meaning of "earned income" does not include gambling winnings. The assignments of error related to this issue are not well taken.

Jaci also contends the court should have enforced Commissioner Jeske's discovery order. Commissioner Jeske ordered Bill to respond, within 30 days of a demand by Jaci, to the discovery requests that remained unanswered at the

time of the 2010 separation agreement. Jaci contends Commissioner Garratt failed to consider her argument that Bill violated Commissioner Jeske's order. Jaci is mistaken. Commissioner Garratt specifically found that Bill had not refused to comply with previous lawful orders of the court and that the order was not violated. Findings of fact 2.1, 2.3.

Jaci contends Commissioner Garratt erred by refusing to hold Bill in contempt. A determination of contempt is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. In re Marriage of Mathews, 70 Wn. App. 116, 126, 853 P.2d 462, review denied, 122 Wn.2d 1021 (1993). An abuse of discretion occurs where a decision is manifestly unreasonably or exercised on untenable grounds or for untenable reasons. Moeller v. Farmers Ins. Co of Wash., 173 Wn.2d 264, 278, 267 P.3d 998 (2011).

Commissioner Garratt explained her denial of the contempt motion as follows:

> There is a request for contempt in this matter. I'm not finding bad faith on either side, and I certainly am not holding Mr. Berni in contempt based on the Court's reviewing the information at hand.

This was not an abuse of discretion. After several months of litigation, Judge Middaugh revised Commissioner's Jeske's ruling that maintenance was due for the year 2009. That ruling put a large portion of Jaci's discovery requests beyond the scope of disclosure authorized by the agreement. Bill admitted to some delay with respect to the documents he did provide, but offered the

9

reasonable excuse that the financial documents requested were so old it was difficult to extract them from the archives of the various financial institutions.

Although Commissioner Garratt did not find Bill in contempt, she did grant Jaci's request for subpoena power over Bill's bank account records:

> I am, however, going to authorize the wife subpoena authority since she—until the obligation is over in 2016 if she believes that she needs to subpoena additional records to show that her former husband has somehow not reported all appropriate income, then she can do the searching.
>
> It's not the responsibility of Mr. Berni to produce these additional records. He is to produce what is spelled out in the separation contract, which is the W-2 forms, the 1099s, and his scheduled income tax forms.

Commissioner Garratt also granted Jaci's request to order Bill to give the IRS permission to release his tax information to Jaci.

On the record before us, it was within Commissioner Garratt's discretion to find that Bill's actions were not willful or in bad faith. We conclude that the court did not abuse its discretion when it refused to hold Bill in contempt.

Finally, Jaci contends the court below should have required Bill to pay her attorney fees. She requests attorney fees totaling $37,950 for her efforts beginning with her first enforcement action through this appeal, based on Bill's alleged intransigence and failure to comply with court orders. Intransigence includes foot dragging and obstruction, filing repeated unnecessary motions, or making the trial unduly difficult and costly by one's actions. In re Marriage of Bobbitt, 135 Wn. App. 8, 30, 144 P.3d 306 (2006). Intransigence also includes incremental disclosures of income. In re Marriage of Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999). The rulings below indicate that the court did not

10

perceive Bill as intransigent or contemptuous, and the record does not provide us with a compelling reason to take a different view.

Alternatively, Jaci requests attorney fees under RCW 26.09.140. We exercise our discretion to deny this request.

Bill requests attorney fees for having to defend a frivolous appeal. We deny this request as well.

Affirmed.

_Becker, J._

WE CONCUR:

_Trickey, J._                    _Appelwick, J._