

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 35888-7-III |
| JERRIE RENEE KULESZA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| KONRAD PATRICK KULESZA, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Konrad Kulesza appeals the dissolution court's finding that he

violated the dissolution decree. We affirm.

## FACTS

Jerrie Renee Kuleza n/k/a "Jerrie Bee Anthony" and Konrad Kulesza married in

August 2010 and separated in February 2015, when Anthony filed for a marital

dissolution. Kulesza worked as a nuclear engineer. The couple bore two children.

At the time of separation, Jerrie Anthony accused Konrad Kulesza of assaulting her. Kulesza denied the assault. He contends the false accusation led to financial difficulties and undue sympathy toward Anthony from the dissolution court.

Konrad Kulesza claims that, after the separation and on March 25, 2015, he retired an Equiline line of credit that encumbered the family's Richland home. He presented the dissolution court no evidence of such payment. On appeal, Kulesza identifies the amount paid as $17,923.31, but he does not cite to the record to confirm this figure. The parties borrowed other funds on a line of credit against the home.

On April 23, 2015, the dissolution court entered a temporary order of child support and spousal maintenance that directed Konrad Kulesza to monthly pay $500 in spousal support and $1,200 in child support. CP 96-97. The court also awarded Jerrie Anthony temporary custody of the family residence and ordered Kulesza to pay the monthly mortgage on the home.

According to Konrad Kulesza, the stress caused by the the marital dissolution and difficulty in visiting his children impacted his physical and mental health. As a result, he absented himself for many days from employment. His absences either led to his dismissal or resignation from employment on August 27, 2015. Jerrie Anthony then obtained employment, and Kulesza cared for the children during Anthony's work hours. Kulesza later gained employment and subsequently lost that position.

On August 19, 2015 and before Konrad Kulesza's first cessation in employment,

Jerrie Anthony and Kulesza mediated a resolution as to the division of assets and debts.

On December 18, 2015, the parties reached an agreement toward a parenting plan. The

parties did not sign any settlement agreement, however, until February 1, 2016. The

settlement agreement, captioned CR 2A Mediated Agreement, read in part:

> *Wife shall be awarded [one hundred percent] of husband's VanGuard IRA Retirement Plan* with the agreement that she will be responsible for payment of all the taxes on the distribution and the community debt that is to be paid from a portion of the IRA proceeds. Upon final decree of dissolution being entered and a subsequent QDRO being completed, wife shall withdraw from the IRA account a minimum of $70,000 in order to pay the outstanding community debts of the parties. A comprehensive list shall be updated and attached to this agreement. These debts must be paid as soon as possible and no later than one month from the date of completion of the QDRO. *Any remaining funds shall be released to wife*. This agreement is based upon acknowledgement that wife shall require these funds to get started out on her own. In exchange, wife agrees that she will not file a notice of intended relocation away from the Tri-cities area for a period of at least (3) three years from the date the final decree dissolution is entered.

Clerk's Papers (CP) at 227 (emphasis added). On appeal, Konrad Kulesza blames the

delay in the signing of settlement agreement on Jerrie Anthony, but cites to no facts in the

record supporting this contention.

On February 3, 2016, the trial court entered the parties' agreed dissolution decree.

The decree attached and incorporated the February 1 settlement agreement. The

dissolution decree awarded Konrad Kulesza the family home in Richland and obligated

him to pay the mortgage and the home equity line of credit loan associated with the

property.  With the entry of the decree, Kulesza did not pay spousal maintenance, but paid $1,000 per month for child support.

Between the time of the mediation and the entry of the divorce decree, Konrad Kulesza withdrew an unidentified sum from the VanGuard IRA retirement account. After the entry of the decree, Konrad Kulesza invaded the VanGuard IRA account five times before he assigned the account to Jerrie Anthony.  The first two postdecree withdrawals occurred respectively on February 9 and 23, 2016.  The five withdrawals amounted to $82,978.  A portion of this amount went to income taxes resulting in Kulesza receiving a net sum of $58,096.  CP 551; RP 209.

From the withdrawals from the VanGuard IRA retirement account, Konrad Kulesza paid community debts of $17,380.  RP 209.  Thus, Kulesza pocketed $40,716. He could have paid additional community debits, including a debt to U.S. Bank in the amount of $4,450 and a debt owed to Citibank in the sum of $1,230, but he chose otherwise.

On February 12, 2016, Jerrie Anthony signed a qualified domestic relations order (QDRO) as required under the parties' agreement and the dissolution decree so that the holder of the VanGuard IRA retirement account would assign the account to Anthony. Konrad Kulesza told her she must pay $300 for the QDRO to be prepared, and, on February 12, she went to Kulesza's attorney's office and paid the sum.  The trial court entered the QDRO on April 14, 2016.

4

PROCEDURE

As a result of Konrad Kulesza's withdrawal of funds from the VanGuard IRA retirement account, Jerrie Anthony filed a motion to enforce the 2016 decree of dissolution. In response, Konrad Kulesza argued that the settlement agreement was ambiguous. He further argued that Jerrie Anthony delayed entry of the QDRO such that he needed to invade the VanGuard IRA account. The delay left him floundering in community debt payments, and he needed the funds from the IRA account to pay community debt. He claimed he informed Anthony that he needed the funds to pay debts and that he was taking the money.

In response to Jerrie Anthony's motion, Konrad Kulesza further asked to receive credit, from the amounts he withdrew from the VanGuard IRA retirement account, for payment of a cell phone bill and car insurance premiums because the payments benefited Jerrie Anthony. He also sought credit for retiring the Equiline home equity line of credit on March 25, 2015, a month after the parties separated.

After reviewing evidence and entertaining argument, the dissolution court entered findings of fact. Finding of fact 3 read in part:

> The parties attended mediation in August 2015 and executed a CR 2A agreement signed February 1, 2016. The CR 2A agreement was attached and incorporated into the *Decree of Dissolution* which was signed by the court on February 3, 2016. Attached to the CR 2A agreement and *Decree* was a list of community assets and debts, with a total of 11 debts listed for Petitioner to pay with a total of approximately $26,000.00.

5

The CR 2A agreement incorporated into the *Decree* states that in part that:

> Wife shall be awarded 100% of Husband's Vanguard IRA Retirement Plan with the agreement that she will be responsible for payment of all taxes on the distribution and the community debt that is to be paid from a portion of the IRA proceeds. Upon a final decree of dissolution being entered and a subsequent QDRO being completed, wife shall withdraw from the IRA account a minimum of $70,000.00 in order to pay the outstanding community debts of the parties. A comprehensive list shall be updated and attached to this agreement. These debts must be paid as soon as possible and no later than one month from the date of completion of the QDRO. Any remaining funds shall be released to wife[....]

*Decree* at 9. Mr. Kulesza withdrew money six days after the *Decree* was entered and again two weeks later. He made a total of five withdraws after the *Decree* was entered and before the account was turned over to Ms. Anthony.

After the *Decree* was entered, a Qualified Domestic Relations Order ("QDRO") was signed by Ms. Anthony on February 12, 2016. Mr. Kulesza demanded that Ms. Anthony pay $300.00 to get the QDRO prepared and Ms. Anthony paid $300.00 to Mr. Kulesza's attorney's office. The QDRO was entered with the court on April 14, 2016, approximately two months after the *Decree* was entered.

After the *Decree* was entered, $82,978.00 was withdrawn from the Vanguard IRA Retirement Plan ("IRA"). Mr. Kulesza actually received $58,096 after applicable taxes and fees. Mr. Kulesza paid community debts totaling $17,300.00 from the monies he received. Ms. Anthony received $18,435.00.

. . . The Court finds that the CR 2A agreement incorporated in to the *Decree* is not ambiguous. It is not disputed that Mr. Kulesza unilaterally invaded the IRA after the *Decree* was signed. Mr. Kulesza actually invaded the account before, but the CR 2A agreement was signed contemporaneously with the *Decree* and the Court declines to reach behind the *Decree* and address funds withdrawn from the IRA prior to the date of the *Decree*.

. . . The Court . . . finds that the QDRO was entered two months after Ms. Anthony signed the document, which is not an unreasonable delay. The Court further finds the delay was not Ms. Anthony's fault.

6

. . . .

The Court finds that Mr. Kulesza made five withdraws totaling $82,978.00 after the *Decree* was entered and prior to Ms. Anthony receiving the account via the QDRO. The Court also finds that Mr. Kulesza used the money to pay some community debts, but that a number of community debts remain unpaid even though he had the money to pay the debts but decided not to. The Court further finds that this litigation was due to Mr. Kulesza's actions and that he violated the CR 2A agreement and the Court's order when he invaded the IRA after entry of the *Decree*. The Court finds that Mr. Kulesza's actions prevented Ms. Anthony from paying off the community debts she was ordered to pay pursuant to the *Decree*.

The Court rejects any argument that Mr. Kulesza should receive credit for paying interest on community debt because the non-payment of community debt was due to Mr. Kulesza's actions in relation to the IRA. The Court also rejects the argument that Mr. Kulesza should receive credit for paying cell phone bills and car insurance bills for the benefit of Ms. Anthony that he paid after the *Decree* was signed because he was not required to do so by the terms of the *Decree* and because Ms. Anthony was not required to contribute to any payments for cell phone or car insurance paid on her behalf by Mr. Kulesza.

. . . .

The Court finds that Mr. Kulesza should not receive credit for paying off the home equity line of credit because he made the decision to pay it off by himself without obtaining court permission, nor was any proof provided of how the line of credit was paid off. The Court understands that the home equity line of credit account acquired during the marriage was not the same home equity line of credit account enumerated in the CR 2A agreement table of debts. The Court finds that whether Mr. Kulesza paid off the line of credit, got a line of credit to pay it off, or didn't pay it off himself, the parties contemplated he would be responsible for the line of credit and he is therefore not entitled to credit.

. . . .

The Court finds that the actions of Mr. Kulesza are the embodiment of bad faith, and that his actions were intransigent. The Court finds that Mr. Kulesza should pay reasonable attorney's fees and costs. The attorney's fees and costs listed in the *Cost Bill* submitted by Petitioner's attorney are reasonable and appropriate because of Mr. Kulesza's actions resulted in Ms. Anthony bringing this motion.

7

CP at 551-53 (alteration in original).

In essence, the trial court found the settlement agreement unambiguous. The court found Konrad Kulesza to be in violation of the dissolution decree by withdrawing funds from the VanGuard IRA account, but declined to find him in violation for the withdrawal of funds before February 3. As a result of the dissolution court's findings, the court entered judgment against Konrad Kulesza in favor of Jerrie Anthony for the amount of $45,120 as compensation due to her pursuant to the award of the Vanguard IRA Retirement Account under the terms of the dissolution decree. The court also awarded Anthony $13,405 in reasonable attorney fees and costs in the sum of $1,000. The court affirmed that Konrad Kulesza must pay the remaining community debts of the US Bank credit card account number ending in 3095 in the sum of $4,450 plus any accrued interest and the Citi credit card account number ending in 9259 in the sum of $1,230 plus any accrued interest.

## LAW AND ANALYSIS

Konrad Kulesza assigns seven errors to the dissolution court's rulings:

1. The trial court erred when finding his actions entailed bad faith.

2. The trial court erred when it refused to consider facts before the date of the dissolution decree.

3. The trial court erred when ruling that the settlement agreement unambiguous.

4. The trial court erred when it ordered him to pay $45,120.

8

5. The trial court erred when it ordered him to pay $13,405 in attorney fees and $1,000 for costs.

6. The trial court erred when it ordered him to pay the community debt owed on the US Bank credit card and the Citi credit card.

7. The trial court erred when it declined to credit him for paying off the home equity loan.

We address these assignments in a different order. We conflate assignment of error 2 with assignment 7, and combine assignments of error 1, 4, 5, and 6.

RAP 10.3(g) reads:

. . . A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number.

Konrad Kulesza identifies no findings of fact by number for purposes of his assignments of error. If the appellant assigns no error to the findings of fact, the trial court's findings become the established facts of the case. *State v. Roggenkamp*, 115 Wn. App. 927, 943, 64 P.3d 92 (2003), *aff'd* 152 Wn.2d 614, 106 P.3d 196 (2005). Application of this rule assists us in resolving this appeal.

Ambiguity of Settlement Agreement

Konrad Kulesza assigns error to the dissolution court's interpretation of the settlement agreement. We deem the court's ruling regarding the language of the settlement agreement to be legal, rather than factual, in nature. Therefore, we review the ruling despite the failure to assign error to any finding of fact.

9

The dissolution decree incorporated Jerrie Anthony and Konrad Kulesza's settlement agreement. Interpretation of a dissolution decree is a question of law. *In re Marriage of Thompson*, 97 Wn. App. 873, 877, 988 P.2d 499 (1999). This court applies de novo review to questions of law. *In re Marriage of Thompson*, 97 Wn. App. at 877.

When the decree incorporates an agreement, we must ascertain the parties' intent at the time of the agreement. *In re Marriage of Smith*, 158 Wn. App. 248, 255, 241 P.3d 449 (2010). If the language of the decree is unambiguous, there is no room for interpretation. *In re Marriage of Smith*, 158 Wn. App. at 256. Generally, this court limits its review to the language of the decree when discerning the agreement's intended effect. *In re Marriage of Smith*, 158 Wn. App. at 256.

Konrad Kulesza suggests that the dissolution court impermissibly modified the decree. A decree is modified when rights given to one party are extended beyond the scope originally intended or reduced. *In re Marriage of Thompson*, 97 Wn. App. at 878. We observe no modification of the decree entered by the dissolution court.

We agree with the dissolution court that, at least as far as the pending dispute is concerned, the agreement contained no ambiguity. The agreement and the decree awarded the entire amount in the VanGuard IRA retirement account to Jerrie Anthony. Kulesza provides no meaningful argument regarding an ambiguity. The main theme of Kulesza's appeal does not surround an ambiguity in the settlement agreement, but rather that the lower court failed to consider financial hardships and other facts that occurred

10

before and after the entry of the agreement. He retroactively challenges the agreement he entered as unfair rather than unclear.

Facts Pre-dating Decree

Konrad Kulesza next asks this court to consider predecree facts which he maintains demonstrate financial hardship toward him to fulfill the terms of the dissolution decree. Kulesza emphasizes the large amount of community debt faced by himself and Jerrie Anthony after separation but before entry of the decree. Kulesza explains that as of March 12, 2015, less than a month after separation, the debts faced by the parties totaled $75,046.70 which represented a $3,598.04 increase in community debt. Kulesza argues the trial court never acknowledged the financial declarations he submitted on March 12, 2015, October 6, 2015, and October 8, 2015, which disclosed the amount of the debt he faced.

Konrad Kulesza further contends that he faced further financial hardship due to a temporary order of child support and spousal maintenance entered on April 23, 2015. The order demanded that he monthly pay $500 in spousal support and $1,200 in child support. He contends the award of spousal maintenance pursuant to RCW 26.09.090 was based on insufficient evidence of the appropriate statutory factors and purpose of spousal maintenance and the trial court chose to overlook the financial circumstances. He contends these awards exceeded his financial means and the dissolution court based the award on the accusation against him of domestic violence.

11

All of these arguments raised by Konrad Kulesza could have been asserted by him before entering the settlement agreement on February 1, 2016. He could have also withheld his signature to the agreed February 3 dissolution decree if he deemed the settlement unfair. Kulesza cites no authority on which we could rule that the dissolution court erred by failing to consider facts known to Kulesza before entry of the dissolution decree when determining whether to enforce the terms of the decree. We observe that, although Kulesza acts pro se on appeal, excellent dissolution counsel represented him before the dissolution court.

Bad Faith

Konrad Kulesza claims the dissolution court committed error by finding him in bad faith when violating the terms of the dissolution decree. Nevertheless, he assigned no assignment of error to the finding of fact that found him to have acted in bad faith. For this reason alone, we reject the assignment of error. Even if we addressed the merits, we would affirm the dissolution court.

In addition to asserting that the trial court should have reviewed his financial condition before the entry of the decree, he maintains that the court should have considered the financial situation between the date of the decree and his violations of the decree when withdrawing funds from the VanGuard IRA retirement account. We respond to this assignment of error with the same answer as to the previous assignment of error. At the time of signing the settlement agreement and the dissolution decree,

Kulesza knew that his financial condition would not change in the coming months. He cites no authority that would allow us to reverse the dissolution court because of its refusal to consider his financial condition at the time of violation of the decree.

Konrad Kulesza also asserts that the entry of the QDRO was delayed and this led to an increase of debt. He blames the delay on Jerrie Anthony and suggests the delay excuses his violation of the dissolution decree. Nevertheless, the dissolution court found that Anthony did not cause any delay. Kulesza assigned no error to this finding of fact. Therefore, we do not review this contention.

We observe that the settlement agreement did not direct Jerrie Anthony to pay the community debt until assignment of the VanGuard IRA retirement account to her and the assignment was not complete until after entry of the QDRO. The signed agreement afforded Anthony thirty days from the date of the QDRO to pay the debt. Although Konrad Kulesza contends the unpaid community debts threatened to cause him bankruptcy, he provides no explanation for this dire predicament, nor does he cite the record to any evidence of an impending bankruptcy.

The finding of bad faith and intransigence supported the dissolution court's award to Jerrie Anthony of reasonable attorney fees and costs. On appeal, Konrad Kulesza does not challenge the reasonableness of the amount of the awards.

As a whole, Konrad Kulesza misunderstands the nature of an appeal. Kulesza wishes this court to provide a fresh view and review the case in its entirety as to whether the dissolution court rulings were fair. Nevertheless, appellate courts play a limited role in the American judicial system. Because the trial court directly sees and hears the parties, the trial court deserves some deference in its rulings, particularly factual rulings. We do not second guess the fairness of a dissolution court's ruling unless the rulings are not based on the facts or contrary to the law.

## Sanctions

On appeal, Jerrie Anthony seeks sanctions on the basis that Konrad Kulesza litigated a frivolous appeal. If an attorney represented Anthony on appeal, we would award reasonable attorney fees and costs based on the nature of the appeal. Because of the lack of legal representation, we deny sanctions.

## CONCLUSION

We affirm the dissolution court's rulings and deny Jerrie Anthony an award of sanctions on appeal.

No. 35888-7-III
*In re the Marriage of: Kulesza*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, C.J.