[No. 112-40662-1.     Division One.     April 20, 1970.]
Panel 2

GEORGE CHARLES CALLAN, *Respondent,* v. RUTH IRENE CALLAN, *Appellant.*

*Robbins & Robbins,* for appellant.

*Wilson & Cogan* and *William A. Wilson,* for respondent.

HOROWITZ, A. C. J.—Plaintiff, George Charles Callan,

filed a petition to interpret and modify a divorce decree between the parties entered December 9, 1965, in favor of the defendant, Ruth Irene Callan. From a judgment upholding the plaintiff's intrepretation of the decree the defendant appeals. The basic questions presented involve the proper intrepretation of paragraphs 2 and 6 of the divorce decree and the allowance of attorneys' fees to the defendant.

In an earlier proceeding on July 28, 1967, the Superior Court for King County ordered the plaintiff to pay to the defendant the sum of $250 per month alimony commencing August 1, 1967, pursuant to paragraph 6 of the divorce decree. Subsequently, the petition below was filed and a hearing held thereon.

The divorce decree, paragraph 2, expressly approved a property settlement agreement theretofore entered into between the parties. The findings and conclusions approved the property settlement agreement and the findings by reference make the agreement a part thereof. The property settlement agreement, paragraph 4, provides:

> The parties hereto understand that wife is presently employed but is in a precarious state of health. Wife is suffering from intense emotional nervousness and from cystic growths on her breasts. It is understood and agreed by and between the parties that in the event wife is forced to give up her employment as a result of her physical condition as above stated prior to the age of fifty-five (55) years of age, it being acknowledged that she is forty-five (45) years of age now, husband shall be obligated to pay her in the nature of alimony the sum of $250.00 per month for a five-year maximum period. Said obligation to pay alimony shall cease upon the following conditions:
> (a) Wife's return to gainful employment;
> (b) Wife's remarriage;
> (c) Wife's achieving the age of 55 years.

Paragraph 6 of the divorce decree provides:

> 6. That, in the event defendant becomes physically incapacitated to continue her gainful employment prior to reaching the age of fifty-five (55) years, plaintiff shall pay to defendant the sum of $250.00 per month, said sum to continue for a period of five (5) years, or until defendant

remarries, becomes re-employed or reaches the age of fifty-five (55) years, whichever shall occur first.

Each party offered medical testimony below concerning the physical condition of the defendant. Petitioner's witness, Dr. Charles A. Gehlen, testified that the defendant

> is emotionally upset and depressed and feeling very insecure and self-contempt [*sic*] was way down and she required further evaluation and treatment before she would be emotionally able to tolerate gainful employment.

Defendant's witness, Dr. Thomas F. Sheehy, Jr., testified that defendant was unable to work "due to depression" and that "A suggestion was made for employment at a lesser level, but I think this is also disastrous to a personal situation." He further testified:

> Occupational therapy programs are designed for people to bring them out, but, to the best of current knowledge of depression, work, as a separate prescription, does not help.

The court below found "That defendant is not incapacitated under Paragraph 6. of final Decree of Divorce and as such no payments are due thereunder." He, accordingly, refused to enter judgment in favor of the defendant for $4,000 claimed as due under paragraph 6 of the divorce decree and decreed that the defendant take nothing under that paragraph.

The interpretation or construction of findings, conclusions and judgments presents a question of law for the court. *Ormachea v. Ormachea,* 67 Nev. 273, 217 P.2d 355 (1950); *Fogel Refrigerator Co. v. Oteri,* 391 Pa. 188, 137 A.2d 225 (1958). If the judgment is unambiguous, there is no room for construction. *Imo Oil & Gas Co. v. Charles E. Knox Oil Co.,* 120 Okla. 13, 250 P. 117 (1926); *Colvig v. RKO Gen., Inc.,* 232 Cal. App. 2d 56, 42 Cal. Rptr. 473 (1965). If, however, the judgment is ambiguous, then the court seeks to ascertain the intention of the court entering the judgment or decree. The general rules of construction applicable to statutes, contracts and other writings are used

with respect to findings, conclusions and judgment. *O'Keefe v. Aptos Land & Water Co.,* 134 Cal. App. 2d 772, 286 P.2d 417, 54 A.L.R.2d 462 (1955). These rules include the rule that the intention of the court is to be determined from all parts of the instrument, and that the judgment must be read in its entirety and must be construed as a whole so as to give effect to every word and part, if possible. 1A. Freeman, Law of Judgments, § 76 (5th ed. 1925); H. Black, Law of Judgments, § 123 (2d ed. 1902); 3 W. Nelson, Divorce and Annulment, § 28.17 (2d ed. 1945); 49 C.J.S. *Judgments* § 436 (1947); 46 Am. Jur. 2d *Judgments* § 73 (1969). The authorities above cited refer to two canons of construction, here particularly pertinent (1) that the court is not confined to ascertaining the meaning of a single word or phrase without regard to the entire judgment, and, if necessary, the judgment roll, and (2) that provisions in a judgment that are seemingly inconsistent will be harmonized if possible. It is not to be assumed that a court intended to enter a judgment with contradictory provisions and thus impair the legal operation and effect of so formal a document.

Paragraphs 2 and 6 of the divorce decree are contained in the same instrument. Although there is some difference in wording between paragraph 4 of the court approved property settlement agreement and paragraph 6 of the decree, the latter is apparently an attempt to paraphrase paragraph 4 of the agreement. There is nothing in the evidence below or in the findings and conclusions on which the divorce decree is based that suggests the court entering that decree intended to modify the property settlement agreement which it had approved in the findings, conclusions, and paragraph 2 of the decree. In our opinion, paragraph 6 of the decree was intended to convey the same meaning as was intended by paragraph 4 of the property settlement agreement. Paragraph 4 expressly recited:

4. The parties hereto understand that wife is presently employed but is in a precarious state of health. Wife is suffering from intense emotional nervousness and from cystic growths on her breasts.

The purpose of the statement appears in the next sentence:

> It is understood and agreed . . . that in the event wife is forced to give up her employment as a result of her physical condition *as above stated* . . . husband shall be obligated to pay . . .

(Italics ours.) It will be noted that paragraph 4 of the property settlement agreement uses the phrase "physical condition as above stated," whereas paragraph 6 of the decree uses the phrase "physically incapacitated." Both phrases are used in connection with the ability of defendant to continue in employment. It is perfectly possible for the similar phrase "physical injuries", for example, to be used in a broad sense including nervousness and disturbances of the nervous system. *Lowenthal v. Mortimer,* 125 Cal. App. 2d 636, 270 P.2d 942 (1954); *Sutton Motor Co. v. Crysel,* 289 S.W.2d 631 (Tex. Civ. App. 1956). The question here is whether the phrase "physically incapacitated to continue her gainful employment" and used in paragraph 6 was used in this broad sense.

The evidence shows that at the time of the court approved property settlement agreement the cystic growths referred to in paragraph 4 had been a condition of long standing and had not interfered with her employment. The evidence also shows that the defendant was having difficulty in remaining employed. She kept quitting her jobs while undergoing treatment for her disabling emotional and psychological state. The medical testimony from both doctors in substance showed that the defendant's emotional and psychological state was responsible for her not remaining in gainful employment. This expert medical evidence was necessary because it was not a matter in the common knowledge of lay triers of the fact. Medical testimony from the respective doctors of the parties was unimpeached, uncontradicted and was not shown to be inherently improbable. Such evidence could not be ignored. See, generally, annot., 8 A.L.R. 796 (1920); 62 A.L.R.2d 1191 (1958); 30 Am. Jur. 2d *Evidence* § 1083 (1967); 58 Am. Jur. *Witnesses* § 864 (1948); *cf., Riblet v. Spokane-Portland Cement Co.,*

45 Wn.2d 346, 274 P.2d 574 (1954). An examination of the court's oral opinion does not show that the court rejected the medical testimony nor is there any express finding that the defendant was not suffering from the emotional and psychological condition testified to by the doctors. The trial court's opinion proceeds rather upon the assumption that the phrase "physically incapacitated" contained in paragraph 6 must be construed to mean incapacity because of bodily hurt or disabling illness, excluding an inability to remain in gainful employment when caused by defendant's emotional and psychological state. In our opinion this assumption proceeds on too narrow a construction of the divorce decree. The purpose of the alimony provision was to provide defendant with support if she could not remain in gainful employment. It was not the physical cause of disability that was significant—it was rather the fact of disability if caused by her "physical condition as above stated." The parties undoubtedly intended that if the plaintiff could not continue in her employment because of her "precarious state of health" and her "intense emotional nervousness" referred to in paragraph 4 of the property settlement agreement, that then she should receive alimony for the period of such disability for "a five-year maximum period."

The court below awarded the plaintiff wife the sum of $500 as attorneys' fees. There was evidence of the plaintiff wife's financial need and of the defendant husband's financial ability to pay. RCW 26.08.190; *Foutch v. Foutch,* 2 Wn. App. 407, 469 P.2d 223 (1970). In fixing the amount, the court presumably took into account the plaintiff's lack of success below. See *Rentel v. Rentel,* 39 Wn.2d 729, 735, 238 P.2d 389 (1951). In view of our determination concerning the meaning of paragraph 6 of the decree, the trial court upon remand should give consideration to that determination in passing upon the attorneys' fees to be allowed. See *Hilsenberg v. Hilsenberg,* 54 Wn.2d 650, 344 P.2d 214 (1959); *cf., Fleckenstein v. Fleckenstein,* 59 Wn.2d 131, 366 P.2d 688 (1961).

The judgment is reversed with directions (1) to enter

judgment in favor of the defendant for unpaid accrued alimony payments from August 1, 1967, together with legal interest on each installment from their respective due dates, and to direct the continuance of said payments for the period described in paragraph 6 of the divorce decree; and (2) in light of this opinion and of any additional evidence the court may receive on the issues of financial need and financial ability to pay, to reconsider the attorneys' fee allowance below and to determine the attorneys' fee allowance on this appeal and on the remand hearing.

UTTER and WILLIAMS, JJ., concur.