IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  35200-5-III |
| BARBARA DANNENBRING, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SCOTT D. DANNENBRING, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — The Stevens County Superior Court entered an order modifying

Scott Dannenbring's obligation to pay spousal maintenance, reducing its amount but

extending its duration.  He appeals, challenging the trial court's denial of his motion to

dismiss the modification request as time barred, and the modification order, which he

argues was an abuse of discretion.  After harmonizing conflicting time frames for the

maintenance obligation appearing in the decree and a later order, we find the request for

modification to be timely. For that reason, and because we find no abuse of discretion by the trial court in ordering the modification, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Barbara and Scott Dannenbring were divorced in January 2011 following a 29-year marriage. Each received approximately 50 percent of the community property.

After considering the factors provided by RCW 26.09.090, the trial court, Stevens County Superior Court Judge Allen Nielson, ordered Scott[1] to pay maintenance to Barbara. Scott was employed as a certified registered nurse anesthetist, while Barbara had been a stay-at-home mother. Barbara proposed to return to school to obtain her master's degree in English as a second language. Judge Nielson ordered maintenance to begin at $3,500 a month, later decreasing to $1,000 a month. He explained that the two-tiered maintenance award was just, because the higher initial amount "allowed [Barbara] to finish her master's degree and the next lower amount would assist her in her transition from displaced homemaker to working professional." *In re Marriage of Dannenbring*, No. 32074-0-III, slip op. at 2 (Wash. Ct. App. Feb. 19, 2015) (unpublished), https://www .courts.wa.gov/opinions/pdf/320740.unp.pdf.

The time frame for the maintenance obligation was addressed in the decree of dissolution, which stated in relevant part:

---

[1] Because the parties share a common last name, we refer to them by their first names. We intend no disrespect.

> The husband shall pay $3,500.00 maintenance. Maintenance shall be paid semi monthly on the 1st and 15th of the month.
>
> Maintenance shall be at $3,500.00 per month for thirty (30) months, through April 30th, 2013, and then on May 1, 2013 the maintenance shall reduce to $1,000.00 per month for an additional thirty (30) months, through November 30, 2015.
>
> The first maintenance payment shall be due October 1, 2010.

Clerk's Papers (CP) at 21. No one questioned at the time why the outside dates for payment (October 1, 2010, through November 30, 2015) demarked a 62-month period, while the provision otherwise referred to only two 30-month periods.

In May 2013, around the time that maintenance payments to Barbara dropped to $1,000 a month, she petitioned for modification. Her motion was heard and decided by Judge Nielson. At the hearing on the motion, Barbara's lawyer argued that Barbara had completed her master's degree early and made her best efforts to find permanent employment, but things had not turned out as hoped. Report of Proceedings (RP) at 5. She continued:

> [M]y client is not asking right now that she be awarded lifetime maintenance. She's asking that the maintenance be reinstated at $3,500 – which is probably 25% of Mr. Dannenbring's true net income – for two years to see if she can become employed. At that point she's going to be 58. So whether or not she's able to find employment, who knows. But we do know she hasn't been able to find employment now.

RP at 7.

Scott's lawyer argued that because Barbara identified "no new facts or circumstances," the court could not modify its previous ruling. RP at 11. Projecting that

3

Barbara would be back to court in a few years if not fully employed, the lawyer argued

that Scott "[will] never have a [full] sleeping night knowing that his divorce will never be

final." RP at 11.

> After hearing from both lawyers, Judge Nielson announced:

> I don't agree that the $3,500 should continue for the remaining 30 months,
> but I do believe that it should be at $2,500. In other words, a $1,500
> increase over the $1,000 that I had ordered. And I think with that
> additional $1,500 per month with the $1,000, that's $2,500 in effect, that
> would then allow her to continue to live at the same level and continue in
> her efforts.

RP at 16. The judge expressed his reliance on *Ovens v. Ovens*, 61 Wn.2d 6, 376 P.2d 839

(1962) and *Bowman v. Bowman*, 77 Wn.2d 174, 459 P.2d 787 (1969). He characterized

*Bowman* as "close, very close to what I have here" in that Barbara, like respondent

Marjorie Bowman, had failed to become fully employed as expected "through no

substantial fault of [her own]." RP at 15; *and see Bowman*, 77 Wn.2d at 175-76 (where

"the anticipated situation of being fully self-supporting had not materialized, through no

substantial fault of respondent," "[t]he court found that this was a material change of

conditions and that she was, therefore, entitled to the continuation of alimony").

> In announcing his oral ruling, Judge Nielson stated, "[T]he $3,500 would stop as I

had scheduled and then it would not revert to $1,000 but rather to $2,500." RP at 17. He

added that Scott need not worry about returning to court in a couple of years, because the

4

court would "put language in [the] order that there will be no further increases in the spousal support." RP at 16-17.

When it was brought to Judge Nielson's attention that the maintenance obligation had already dropped to $1,000 and his ruling would require Scott to make up shortfalls in prior months (the hearing took place on July 30, 2013), the judge modified his ruling, stating, "I'll back date it to June 1st, then . . . [t]hat would be midway between the petition and today." RP at 18.

The written order entered following the hearing included the following findings about the timing of the modified maintenance:

9.    The way the Decree reads, Barbara['s] spousal maintenance was at $3500.00 for thirty (30) months (2.5 years) and then $1000.00 for an additional thirty (30) months (2.5 years).

10.   Therefore while the Court does not agree that the spousal maintenance should remain at $3500.00 per month for the second thirty (30) month period, it should also not be at $1000.00 for the second thirty (30) month period.

11.   The court will order that the spousal maintenance will be increased from $1000.00 to $2500.00 per month for this second thirty (30) month period.

12.   The Court also finds good cause to order that there will be no further increases in spousal support and the Court forecloses that possibility. When [Barbara's] spousal maintenance ends at the end of the second thirty (30) month period, it will end finally without ability for [her] to seek another modification.

. . . .

14.   The spousal support increase to $2500.00 from $1000.00 per month will take effect June 1, 2013.

CP at 30.  The order was presented by Barbara's lawyer and was signed by Scott's

lawyer, indicating, "Approved for entry: Notice of presentation waived."  CP at 31.

Both parties appealed.  In an unpublished decision, this court rejected Scott's

argument that the trial court erred in modifying maintenance and rejected Barbara's

argument that the trial court erred in denying her an award of attorney fees.

*Dannenbring*, No. 32074-0-III, slip op. at 7, 10.  Barbara also challenged the provision of

the order barring her from bringing future modification petitions, which Scott conceded

was error.  This court's unpublished decision observed that "[Barbara] argues a good

chance exists she will not become self-supporting given her age and lack of work

history," and responded:

> If Ms. Dannenbring finds she still needs maintenance after the fixed term
> ends, she can petition for further modification.  *See Ovens*[, 61 Wn.2d at 9],
> (stating continuance of maintenance can be reviewed at the end of the fixed
> period if there is a showing of need and "the evidentiary expectation upon
> which the trial judge premised his finding on has not, in fact,
> materialized").

*Dannenbring*, No. 32074-0-III, slip op. at 7, 8-9.

On October 30, 2015, eight months after this court's unpublished decision was

filed and a month before the November 30, 2015 maintenance termination date identified

in the decree, Barbara petitioned for another modification of maintenance.  She asserted a

continuing need for maintenance through the time she would be able to retire.  Scott

responded with a motion to dismiss her petition, arguing that the court lacked jurisdiction

to consider it because the last maintenance payment he owed Barbara was paid on September 15, 2015. He argued that "[a] modification proceeding must be commenced before the termination of the original maintenance award or the court loses jurisdiction over the maintenance issue." CP at 43 (citing *Brown v. Brown*, 8 Wn. App. 528, 507 P.2d 157 (1973)). His declaration filed in support of the motion characterized the decree's November 30, 2015 termination date as a "scrivener's error[ ]." CP at 56.

Barbara's petition and Scott's motion were again heard by Judge Nielson. In refusing to dismiss Barbara's petition, he attached importance to several findings made when modifying maintenance in 2013. Referring to those prior findings as "the Findings," he made the following further findings:

> D. The Petition for Modification of Spousal Maintenance and Post-secondary Child Support was filed on October 30, 2015. The Petition was filed within the fixed term set in both the Decree and later in the Findings. The Decree had maintenance payments run "through November 30, 2015."
>
> E. In the Findings, which modified the Decree, the fixed term was put at 30 months which "took effect June 1, 2013" and thus terminated at the end of November, 2015. This is consistent with the best reading of the Decree, and again the result of the modification. The Court of Appeals invited possible modification "at the end of the fixed period," namely at the end of November, 2015. The Petition was, in fact, filed on October 30, 2015. This reading serves the Court's intent of allowing the Petitioner to determine if she is able to be financially independent.

CP at 154-55 (footnote omitted).

Judge Nielson later heard and granted Barbara's petition to modify the maintenance obligation. He ordered Scott to pay maintenance reduced to $2,000 a month, but continuing until Barbara reaches age 68 and is eligible for social security.

Scott appeals.

ANALYSIS

Scott appeals the trial court's order denying his motion to dismiss Barbara's modification petition and its subsequent order modifying the maintenance obligation. We address his assignments of error in that order.

I.  A REASONABLE HARMONIZATION OF THE CONFLICTING PROVISIONS OF THE DECREE SUPPORTS AN OBLIGATION THAT CONTINUED THROUGH NOVEMBER 30, 2015. THE MODIFICATION PETITION WAS THEREFORE TIMELY.

In Washington, "[o]nce final payment has been made pursuant to an alimony/maintenance provision from which no appeal is taken, the court may not reinstate that alimony obligation under the auspices that it amounts to a modification of the decree based upon changed circumstances." *In re Marriage of Mason*, 40 Wn. App. 450, 457, 698 P.2d 1104 (1985). The court's lack of authority has sometimes been characterized as a lack of jurisdiction to modify the maintenance award. *See id.*; *Brown*, 8 Wn. App. at 529. The issue presented by Scott's motion to dismiss Barbara's petition was whether his liability to pay maintenance existed at the time she filed the petition.

Whether it existed at that time turns on the meaning of the trial court's decree, as modified by its 2013 order.[2]

In ruling on Scott's motion to dismiss, the trial court had the authority to clarify, but not to modify, its decree and 2013 order. "A trial court does not have the authority to modify even its own decree in the absence of conditions justifying the reopening of the judgment." *In re Marriage of Thompson*, 97 Wn. App. 873, 878, 988 P.2d 499 (1999). Absent authority to modify, an ambiguous decree may only be clarified. *Id.* "A decree is modified when rights given to one party are extended beyond the scope originally intended, or reduced. A clarification, on the other hand, is merely a definition of rights already given, spelling them out more completely if necessary." *Id.* (citing *Rivard v. Rivard*, 75 Wn.2d 415, 418, 451 P.2d 677 (1969)).

The construction of a dissolution decree or other order is a question of law, which we review de novo. *Id.* at 877. In construing a trial court decree or order, we seek to ascertain the intention of the court that entered it by using the rules of construction applicable to statutes and contracts. *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). In the contract realm, where provisions of writings are not merely

---

[2] Judge Nielson found the liability could have existed at that time for an alternative reason: that as a result of earlier shortfalls, an additional $3,000 remained owing after what Scott believed was his final, September 15, 2015 payment. This is disputed, however, and the record on review does not provide clear support for the finding.

ambiguous but actually conflict, we construe them so as to harmonize them with one another. *Farmers Ins. Co. of Wash. v. USF&G Co.*, 13 Wn. App. 836, 840, 537 P.2d 839 (1975). Accordingly, "provisions in a judgment that are seemingly inconsistent will be harmonized if possible." *Callan v. Callan*, 2 Wn. App. 446, 449, 468 P.2d 456 (1970). "It is not to be assumed that a court intended to enter a judgment with contradictory provisions and thus impair the legal operation and effect of so formal a document." *Id.* In resolving conflicting provisions, a more recent order that was within the court's authority to enter takes priority over an earlier order. *Cf. City of Spokane v. Rothwell*, 166 Wn.2d 872, 877, 215 P.3d 162 (2009) (in construing irreconcilably conflicting statutes, a more recent statute takes priority over an older statute).

The decree entered in 2011 is internally inconsistent in referring to two 30-month periods for payment but identifying starting and ending dates that demark a 62-month period. The 2013 modification order tips the balance in favor of finding a 62-month obligation ending on November 30, 2015, as the trial court concluded. It tips the balance by providing that "spousal maintenance will be increased from $1000.00 to $2500.00 per month for this second thirty (30) month period" and that "the spousal support increase to $2500.00 from $1000.00 per month will take effect June 1, 2013." CP at 30. Reading those express provisions together, an increase to a $2,500.00 monthly maintenance obligation that "take[s] effect June 1, 2013," and lasts for the "second thirty (30) month

10

period" will only be satisfied if $2,500.00 is paid each month through November 30, 2015.

Thus read, the 2013 modification order cures the decree's inconsistency by effectively taking the two months in which Scott paid only $1,000 (April and May 2013) out of the second 30-month period. It was the trial court's prerogative in considering the modification motion to ignore those relatively inconsequential payments and create a 30-month period of $2,500 payments that would begin on June 1, 2013. Ignoring the April and May 2013 payments does not offend any provision of the 2013 order. It is not irreconcilable with anything the court said during the modification hearing or with what the court was seeking to accomplish. It is a reasonable harmonization of conflicting provisions in the decree and 2013 modification order.

Scott makes no attempt to harmonize the conflicting provisions. He baldly asserts that the reference to "November 30, 2015," in the decree was a "scrivener's error" without considering that the "30 month" references might themselves have been the error. He simply insists that we resolve the inconsistency in his favor. Because the trial court's construction provides a basis for harmonizing the conflicting provisions and Scott does not, we affirm the trial court.

II.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY MODIFYING THE
        MAINTENANCE OBLIGATION.

Scott contends the trial court abused its discretion in modifying the maintenance

obligation by failing to apply the general statutory requirement that the party seeking

modification show "a substantial change of circumstances." RCW 26.09.170(1)(b). He

asks us to limit the application of *Ovens* and *Bowman* to cases in which the decree or

maintenance order being modified explicitly stated the expectation that has not come to

pass. He additionally argues that the modification is unjust because it leaves Barbara

with a monthly surplus while he will face a monthly shortfall.

*"Substantial change of circumstances" finding*

This court's unpublished decision in the prior appeal summarizes the requirement

that a party seeking modification show a substantial change of circumstances, and how

the showing can be satisfied by the party's inability to become self-supporting through no

fault of her own:

> Maintenance awards can only be modified upon a showing of a
> substantial change in circumstances not within the parties' contemplation
> at the time of the dissolution decree. [*In re Marriage of Spreen*, 107 Wn.
> App. 341,] 347[, 28 P.3d 769 (2001)]; *see also* RCW 26.09.170(1). "The
> phrase 'change in circumstances' refers to the financial ability of the
> obligor spouse to pay vis-à-vis the necessities of the other spouse." *In re
> Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292 (1987).
> Regarding the financial ability of the obligor spouse, "a former wife may
> not obtain additional alimony on the theory that such is in keeping with her
> former husband's present station in life." *Gordon v. Gordon*, 44 Wn.2d
> 222, 228, 266 P.2d 786 (1954). We review a trial court's change in
> circumstances determination in a maintenance modification for an abuse of

12

> discretion. *Ochsner*, 47 Wn. App. at 524-25. A trial court abuses its discretion when its decision is entered on manifestly unreasonable grounds or for untenable reasons. *Id.* at 525.
>
> In *Bowman v. Bowman*, 77 Wn.2d 174, 459 P.2d 787 (1969), the court upheld a substantial change in circumstances determination. The trial court believed the wife would eventually become self-supporting and awarded her maintenance for two years. *Id.* at 175. During these two years, the wife received the equivalent of a high school diploma and enrolled in vocational school. *Id.* However, the wife was not in good health and was limited to part-time work. *Id.* Before the two-year period ended, the wife petitioned to modify her maintenance. *Id.* The trial court granted the wife's petition, finding "the anticipated situation of [the wife] being fully self-supporting had not materialized, through no substantial fault of [the wife]." *Id.* The *Bowman* court upheld the modification because "[t]he primary purpose of the payment of support . . . for a period of 2 years was to enable [the wife] to become self-supporting by the end of that period through additional training and work experience." *Id.* at 176.

*Dannenbring*, No. 32074-0-III, slip op. at 4-5 (most alterations in original).

At oral argument of the present appeal, Scott argued that *Oven* and *Bowman*, both decisions from the 1960s, were abrogated by adoption of the 1973 "Dissolution of Marriage Act," LAWS OF 1973, SUBSTITUTE H.B. 392, 43rd Leg., 1st Ex. Sess., ch. 157. Wash. Court of Appeals oral argument, *In re Marriage of Dannenbring*, No. 35200-5-III (Oct. 23, 2018) at 8 min., 19 sec. through 8 min., 24 sec. (on file with court). He pointed out that before the 1973 legislation, Washington statutes provided that an "alimony" award "'may be modified, altered and revised by the Court *from time to time as circumstances may require*.'" *Berry v. Berry*, 50 Wn.2d 158, 164, 310 P.2d 223 (1957) (emphasis added) (citing LAWS OF 1949, ch. 215, § 11, codified at former RCW 26.08.110). He argued that because *Ovens* and *Bowman* were decided under this earlier,

more lenient standard, courts have erred by continuing to rely on the two decisions as authority after the legislature enacted the "substantial change in circumstances" standard beginning in 1973.

The Supreme Court's 1980 decision in *Wagner v. Wagner*, 95 Wn.2d 94, 621 P.2d 1279, gives the lie to his argument. As explained in *Wagner*, a requirement that alimony may ordinarily be modified "only upon the showing of a substantial change of circumstances that was not within the contemplation of the parties at the time the decree was entered" was added to former RCW 26.08.110 by "judicial overlay," citing *Lambert v. Lambert*, 66 Wn.2d 503, 508-10, 403 P.2d 664 (1965) and *Crosetto v. Crosetto*, 65 Wn.2d 366, 397 P.2d 418 (1964). *Wagner*, 95 Wn.2d at 98. In a footnote, the *Wagner* court observed that the 1973 legislation did not add a new requirement; rather, it "incorporated the judicial overlay." *Id.* at n.1. While *Ovens* predated *Lambert* and *Crosetto*, *Bowman* followed adoption of the judicial overlay. It even speaks of Marjorie Bowman's "material change of conditions." *Bowman*, 77 Wn.2d at 175.

Scott's second argument—that modification should not be available because Judge Nielson's 2013 order did not explicitly set forth his expectations—is also unpersuasive. To begin with, when the modification request is presented to the same judge who entered the existing maintenance obligation, the judge may be able to recall his or her earlier expectations, as Judge Nielson did here. We trust a trial court to be an honest reporter of

14

those expectations even if they were not spelled out in the prior order—a "spelling out"

Washington statutes do not require.

Moreover, matters Judge Nielson was required to consider in setting maintenance

in 2013 make it likely that he expected professional advancement for Barbara by

November 30, 2015, and a corresponding improvement in her financial self-sufficiency.

The purpose of maintenance is to support a spouse until he or she is able to become self-

supporting, *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).[3]

This court recognized in its earlier unpublished opinion that affording Barbara more time

to become fully self-supporting was the goal of the trial court's 2013 modification order,[4]

and accordingly, that "[i]f Ms. Dannenbring finds she still needs maintenance after the

---

[3] If one spouse will need support for an extended period of time, a trial court may instead "choose[ ] a disproportionate division of the property in lieu" of ordering maintenance. *In re Marriage of Estes*, 84 Wn. App. 586, 593, 929 P.2d 500 (1997). "The trial court may properly consider the property division when determining maintenance, and may consider maintenance in making an equitable division of the property." *Id.* (citing *In re Marriage of Rink*, 18 Wn. App. 549, 552-53, 571 P.2d 210 (1977). Here, the property was evenly divided.

[4] This court said the following about the 2013 modification hearing:

> The trial court *continued to reason Ms. Dannenbring can work and support herself independently* in the modification proceeding. While Ms. Dannenbring is in her mid-50s and has limited work experience, she now has a master's degree in English as a second language. She was awarded 50 percent of the community assets in the dissolution and virtually no liabilities. The court modified her maintenance to suit Ms. Dannenbring's current needs *while giving her additional time to become self-supporting.*

*Dannenbring*, No. 32074-0-III, slip op. at 8 (emphasis added).

fixed term ends, she can petition for further modification." *Dannenbring*, No. 32074-0-III, slip op. at 8. It is law of the case. The fact that she did not achieve the goal is a substantial change in circumstances authorizing a further modification of maintenance.

For someone in their 50s who has been out of the workplace for decades, predicting when they are likely (if at all) to become self-supporting is fraught with uncertainty. As long as the party needing maintenance has acted in good faith and failed to become self-supporting through no fault of her own, it does not matter whether, at the time of the earlier maintenance award, the parties and the court felt sure about the recipient's prospect for success, or recognized a real possibility of failure. What matters is that the duration of the prior maintenance award was in fact predicated (confidently or with caution) on the ability of the party to become self-supporting during the period of that award.

*No abuse of discretion in fixing the maintenance amount is shown*

This court's unpublished decision in the prior appeal summarizes the matters to be considered by the trial court in setting the amount of maintenance:

> Once a court finds modification is needed, the nonexclusive list of factors seen in RCW 26.09.090 must be considered in determining the amount of maintenance. These factors include the financial resources of the spouse seeking maintenance, the standard of living established during the marriage, the length of the marriage, the physical condition of the spouse seeking maintenance, the time needed for the spouse seeking maintenance to find employment, and the ability of the spouse from whom maintenance is sought to meet the needs of both spouses. RCW 26.09.090. "[T]he only limitation placed upon the trial court's ability to award

> maintenance is that the amount and duration, considering all relevant factors, be just." *In re Marriage of Washburn*, 101 Wn.2d 168, 178, 677 P.2d 152 (1984); *see also* RCW 26.09.090. Calculation of what is reasonable in terms of amount and length of time before maintenance terminates depends on the facts and circumstances of each particular case. *See Spreen*, 107 Wn. App. at 348.

*Dannenbring*, No. 32074-0-III, slip op. at 5 (alteration in original). We review the award of maintenance for abuse of discretion. *Washburn*, 101 Wn.2d at 179.

Among matters found by Judge Nielson in modifying maintenance to a reduced amount but a longer duration were the following:

- Since the original maintenance award and more particularly since the 2013 modification, Barbara's monthly income "has seen only a modest recent increase" and she has more monthly expenses than monthly income; CP at 409;

- Barbara has $116,561 in available assets, mostly bank deposits, and she uses the bank deposits to make ends meet;

- In July, 2015 she underwent a total knee replacement and for 4-5 months was unable to work and, again, used her bank deposits;

- She rents a modest apartment in Seattle and drives the car she purchased from Scott in 2011 that was rear-ended and has yet to be fully repaired;

- She is 59 years old, looks ahead to only a small state teacher's pension and little social security, making the dwindling bank deposits all the more important;

- By contrast, Scott—although also reporting monthly expenses that exceed income—had steadily increasing income that at the time of the court's decision was $13,992 a month as compared to Barbara's income of $2,800 a month;

- Scott owns two homes: one in Enterprise, Oregon, his equity in which was not disclosed; and the former family home in Colville, Washington, now a "'second home rental,'" with an estimated equity of $230,715;[5] CP at 410; and

- While Scott is paying substantial debt service on what he characterizes as educational costs for the couple's children, "the Total Loan Balance, without more documentation, is disproportionate to the students' education costs." CP at 411.

Scott argues that the court's order is manifestly unreasonable because after taking the required payments into consideration, Barbara will be left with positive cash flow, while he faces monthly deficits. Yet at the time of the 2015 modification request, Scott took home $13,992.00 in earnings a month while Barbara's monthly take-home was $2,800.00. She lived in Seattle on monthly expenses of $3,359.75, while he lived in Enterprise, Oregon, on monthly expenses of $14,647.96. Even after subtracting the debt service he attributes to his children's postsecondary education expenses (the amount of which Judge Nielson questioned), Scott's monthly expenses are more than three times the amount of Barbara's monthly expenses. In applying the factors to be considered in setting maintenance, what is relevant is how parties *could* handle their money, not how they *do* handle their money. *See* RCW 26.09.090(1)(a), (f) (identifying, as relevant, the parties' "ability" to meet their needs).

---

[5] Based on a mortgage balance of $220,285 and a listing showing $450,000. CP at 410.

Judge Nielson's conclusions of law B, C, and D support the maintenance award.

Scott challenges each of them. Conclusion B provides:

> The goal was for Barbara . . . to become fully self-supporting—that goal
> has yet to be realized. And, Scott . . . has the financial ability to help pay
> for the necessities of his former spouse.

CP at 411 (internal citations omitted). Scott contests the first statement. He argues it

does not follow from the earlier hearing. As observed above, however, it is law of the

case, recognized in this court's 2015 opinion, that the goal was for Barbara to become

self-supporting. That "the goal has yet to be realized" is supported by the trial court's

findings that Barbara has $4,068 in monthly expenses and $2,800 in monthly income, that

she uses her bank deposits to make ends meet, and that she looks ahead to only a small

state teacher's pension and little social security, making the dwindling bank deposits all

the more important.[6]

Scott argues that evidence does not support his ability to pay, since his expenses

exceed his income. But again, ability to pay is determined with reference to how a party

could be using his money, not how he is using it.

Conclusion C provides:

---

[6] Scott assigns error to some of these findings, but only on the basis that the
evidence in support was Barbara's testimony rather than bank records showing how
deposits were used. Br. of Appellant at 28. Barbara's testimony was admissible
evidence. We do not redetermine credibility or reweigh evidence on review. *E.g.*, *City of
Sunnyside v. Gonzalez*, 188 Wn.2d 600, 612, 398 P.3d 1078 (2017).

> The Court did not contemplate that Barbara . . . , in 2016-2017, would have to use her retirement, namely her bank deposits, in order to meet monthly expenses.  And, it was not contemplated that Scott . . . would continue to have increased income and substantial property holdings.  These make for a substantial change in circumstances.

CP at 411-12.  Scott argues that the first statement (which we deem a finding, not a conclusion) does not follow from the earlier hearing.  Here again, it is law of the case that in entering the 2013 modification order, Judge Nielson expected that it would give Barbara time to become self-supporting.  The second statement is not necessary to support the maintenance award.

> Conclusion D provides:

> Barbara . . . has limited financial resources.  She is only now verging on full-time employment as an English Second Language teacher.  The standard of living of Barbara . . . , since her separation and then dissolution, has gradually deteriorated.  She was married for 29 years, a long-term marriage.  She finds herself eight years short of Social Security.  [Scott] has the net income to not only meet his needs, but also to provide a reasonable maintenance.  Barbara . . . is $1,200 or $1,300 [short] of meeting [her] monthly expenses and other bills.  Further, she needs a reliable car.  And, she needs this help to avoid depleting her retirement funds.  This need will continue even when she is able to work full-time.  The reasonable amount of $2,000 a month starting May 5, 2016, and the 5th of each following month.  The obligation shall continue until Barbara . . . turns 68 years old and is eligible for Social Security.

CP at 412 (footnote omitted) (internal citations omitted).  Scott disputes the statement that Barbara's standard of living has gradually deteriorated, arguing that her income has increased over time.  He disputes the identification of Barbara as having a monthly shortfall, arguing that she has cash assets she could use to pay off debts.

Deterioration in Barbara's standard of living is supported by the finding that she is required to use dwindling bank deposits to make ends meet and has a car that she has yet to fully repair. That she has a $1,200 to $1,300 monthly shortfall is supported by the court's finding that she has $4,068 in monthly expenses and $2,800 in monthly income.

Since the trial court's conclusions support the maintenance modification and the findings of fact support the conclusions, the modification is affirmed.[7]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Siddoway, J._

Siddoway, J.

WE CONCUR:

_Korsmo, J._

Korsmo, J.

_Pennell, A.C.J._

Pennell, A.C.J.

---

[7] A motion to extend the time to file an attorney fee statement for Barbara was referred to the panel for decision. We grant the motion to extend time but note that the materials submitted do not meet the requirements of RCW 26.09.140 and RAP 18.1(c). We deny the request for an award of fees on appeal.