**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| SUSAN RONNING, <br><br>         Respondent, <br><br>      v. <br><br> ASHLIE VANWINKLE, <br><br>         Appellant. | DIVISION ONE <br><br> No. 83988-8-I <br><br> UNPUBLISHED OPINION |

DWYER, J. — Ashlie VanWinkle appeals from the superior court order granting to Susan Ronning costs arising from its judgment determining that Ronning was the rightful possessor of certain chattel. VanWinkle asserts that the superior court abused its discretion by awarding to Ronning costs inherent in the superior court's judgment. This is so, VanWinkle contends, because the bankruptcy court order, which lifted the stay barring the superior court from proceeding as to the issue of possession of the chattel, did not authorize the superior court to award such costs. Finding no error, we affirm.

I

In June 2016, VanWinkle placed certain chattel into Ronning's care and custody pursuant to an agreement that Ronning would provide boarding to the chattel for an unspecified amount of time.[1] Between June and September 2016, VanWinkle provided boarding to the chattel and paid for veterinary services

---

[1] The chattel in question is a dog named Bella.

relating to the health of the chattel.  In September 2016, Ronning submitted a final billing statement to VanWinkle.

VanWinkle did not submit payment to Ronning.  Fifteen days later, VanWinkle abandoned the chattel into Ronning's custody.[2]  The chattel thereafter became Ronning's legal property and remained in Ronning's care for more than four years.

In August 2020, VanWinkle removed the chattel from Ronning's property without Ronning's knowledge or authorization, and relocated to Arizona with the chattel in her custody.  Between August 2020 and March 2022, Ronning traveled to Arizona, attempting to obtain possession of the chattel from VanWinkle, but Ronning did not succeed in doing so.

On June 15, 2021, VanWinkle filed a petition for chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Arizona.[3]  Ronning subsequently filed two motions with the bankruptcy court, one seeking the court's determination as to the rightful possessor of the chattel and another seeking

---

[2] The animal abandonment statute reads, in pertinent part, as follows:
**When deemed abandoned.** An animal is deemed to be abandoned under the provisions of this chapter when it is placed in the custody of a veterinarian, boarding kennel owner, or any person for treatment, board, or care and:
(1) Having been placed in such custody for an unspecified period of time the animal is not removed within fifteen days after notice to remove the animal has been given to the person who placed the animal in such custody or *having been so notified the person depositing the animal refuses or fails to pay agreed upon or reasonable charges for the treatment, board, or care of such animal.*
RCW 16.54.010 (emphasis added).

[3] "Section 362 of the bankruptcy code provides that filing a bankruptcy petition creates an automatic 'stay, applicable to all entities.'"  DeVeny v. Hadaller, 139 Wn. App. 605, 617, 161 P.3d 1059 (2007) (quoting Former 11 US.C. § 362(a) (1998)).  "The filing of a bankruptcy petition creates a bankruptcy estate, which is protected by an automatic stay of actions by all entities to collect or recover on claims."  In re Palmdale Hills Prop., LLC, 423 B.R. 655, 663 (B.A.P. 9th Cir. 2009) (citing 11 U.S.C. §§ 541(a), 362(a)), aff'd, 654 F.3d 868 (9th Cir. 2011).

relief from the bankruptcy filing's automatic stay so that the Snohomish County Superior Court could proceed to determine the rightful possessor of the chattel.

In November 2021, the bankruptcy court ordered that it was abstaining from adjudicating Ronning's motion requesting a determination on the issue of the rightful possessor of the chattel. The bankruptcy court further ordered that it was granting Ronning's motion for relief from the automatic stay "so that the Superior Court of Washington can resolve the pending litigation concerning legal ownership of the dog,"[4] allowing the parties to "proceed under applicable non-bankruptcy law in the pending litigation in the Superior Court of Washington to resolve who is the legal owner of the dog and to enforce any resulting order or judgment."[5]

Ronning subsequently filed a complaint in the superior court seeking a determination on the rightful possessor of the chattel. The superior court held a one-day bench trial and, at a hearing the following day, the court issued judgment in favor of Ronning, including an award of costs associated with the judgment.[6]

One week later, the superior court issued a written order setting forth its judgment with the following findings of fact and conclusions of law:

---

[4] The bankruptcy court clarified that it "makes no determination of who legally owns the dog that is the subject of the motions because the state court can determine this issue in the pending litigation."

[5] The bankruptcy court further ordered that, "[n]otwithstanding this order allowing the state court litigation to proceed on the issue of who owns the dog, [Ronning] may not attempt to collect any debt from [VanWinkle] that has been discharged in this bankruptcy case as [VanWinkle] no longer has personal liability for such debt."

[6] Both parties appeared and testified pro se.

1. Ashlie VanWinkle boarded her dog Bella (a 4-year-old Spayed Brittany Spaniel dog) with Susan Ronning.
2. Ms. VanWinkle and Ms. Ronning entered into an agreement with respect to compensation for Ms. Ronning's services.
3. Ms. VanWinkle received a final billing statement from Ms. Ronning on Sept. 1, 2016.
4. Ms. VanWinkle failed to pay for any of Ms. Ronning's services.
5. Pursuant to RCW 16.54.010, Ms. VanWinkle abandoned Bella with Ms. Ronning effective Sept. 16, 2016.
6. Ms. VanWinkle left Bella in Ms. Ronning's care for four years between the dates of June 14, 2016, and Aug. 9, 2020.
7. Ms. VanWinkle took Bella, without Ms. Ronning's knowledge or authorization, from Ms. Ronning's property on Aug. 9, 2020.
8. Bella is the property of Ms. Ronning's and shall be returned to her pursuant to RCW 7.64.[7]

The court ordered:

> The Britany Spaniel dog, known as Bella . . . is now and has been legally owned by Susan Ronning since Sept. 16, 2016.
> Pursuant to RCW 7.64.035(1)(b), the Sheriff in the jurisdiction [in which] the defendant lives, shall immediately take possession of Bella and put Susan Ronning in possession of Bella. If deemed necessary, the sheriff shall be authorized to enter, and cause to be broken open, an enclosure and/or building to secure the return of the property [to-wit: Bella].
> Failure to turn over possession of the property to the sheriff and pay the [judgment] amount to Susan Ronning may subject the defendant to being held in contempt of court upon application to the court by the plaintiff without further notice.
> As the property is in a county other than the county in which the action was commenced, the sheriff of the county where the property is found, may execute the order awarding possession and take possession of the property. For the purpose of following the property duplicate orders awarding possession may be issued, if necessary, and served as the original.
> Both parties appeared before the court at trial and had an opportunity to argue their case. Bond is not required.
> The Court is ruling in favor of Ms. Ronning for the following damages:

---

[7] On appeal, VanWinkle does not challenge the superior court's findings of fact or conclusions of law. Unchallenged findings of fact are treated as verities on appeal. Pierce v. Bill & Melinda Gates Found., 15 Wn. App. 2d 419, 429, 475 P.3d 1011 (2020) (citing State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)). Moreover, "[f]ailure to assign error to the [superior] court's conclusions of law precludes consideration on appeal." Halvorsen v. Ferguson, 46 Wn. App. 708, 722, 735 P.2d 675 (1986) (citing Bank of Wash. v. Burgraff, 38 Wn. App. 492, 500, 687 P.2d 236 (1984)).

      1. $4,989 for veterinary bills and boarding costs associated with the Brittany Spaniel dog, known as Bella, and
      2. $356 for Ms. Ronning's previous flight to Arizona in her attempt to retrieve the Brittany Spaniel dog, known as Bella.

VanWinkle appeals.[8]

II

VanWinkle asserts that the superior court abused its discretion by awarding Ronning costs arising from the superior court's judgment determining that Ronning was the rightful possessor of the chattel in question. This is so, VanWinkle contends, because the bankruptcy court order did not authorize the superior court to award such costs. We disagree.

The bankruptcy court herein unambiguously abstained from determining the issue of the rightful possessor of the chattel in question. Furthermore, in removing the automatic stay as to that issue, the bankruptcy court acquiesced to the superior court's broad equitable authority to proceed in determining—and enforcing its determination as to—that issue.

The superior court subsequently exercised its broad equitable authority. It determined that Ronning was the rightful possessor of the chattel and fashioned equitable relief in awarding judgment to Ronning. As part of its equitable relief, the superior court included the cost of preserving and disposing of the chattel into Ronning's possession, a sum plainly associated with effectuating its judgment. Finding no error as to the court's exercise of its broad equitable discretion, we affirm.

---

[8] VanWinkle does not challenge the superior court's calculation of the sum awarded to Ronning. It is therefore a verity on appeal. Pierce, 15 Wn. App. 2d at 429 (citing Hill, 123 Wn.2d at 644).

A

As an initial matter, in determining whether the superior court abused its discretion, we first consider the scope of the bankruptcy court's order in this matter.

In reviewing a court order, "[t]he interpretation or construction of findings, conclusions and judgments presents a question of law for the court." Callan v. Callan, 2 Wn. App. 446, 448, 468 P.2d 456 (1970) (citing Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355 (1950); Fogel Refrigerator Co. v. Oteri, 391 Pa. 188, 137 A.2d 225 (1958)). "If the judgment is unambiguous, there is no room for construction." Callan, 2 Wn. App. at 448 (citing Imo Oil & Gas Co. v. Charles E. Knox Oil Co., 120 Okl. 13, 250 P. 117 (1926); Colvig v. RKO Gen., Inc., 232 Cal. App. 2d 56, 42 Cal. Rptr. 473 (1965)). "It is not to be assumed that a court intended to enter a judgment with . . . provisions [that] impair the legal operation and effect of so formal a document." See Callan, 2 Wn. App. at 449.

11 U.S.C. § 362(d) of the Federal Bankruptcy Code reads, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay. . .  (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." Additionally, a "bankruptcy court may voluntarily abstain" from asserting its jurisdiction over a matter "if it determines that 'it is in the interest of justice, or in the interest of comity with State courts, or

respect for State law.'" In re Careau Grp., 923 F.2d 710, 712 (9th Cir. 1991)

(quoting 28 U.S.C. § 1334(c)(1)).[9]

Here, in response to Ronning's motion for relief, the bankruptcy court

determined that

> cause exists under 11 U.S.C. § 362(d)(1) to grant [Ronning's]
> Motion for Relief from the Automatic Stay so that the Superior Court
> of Washington can resolve the pending litigation concerning legal
> ownership of the dog. To clarify, this Court makes no determination
> of who legally owns the dog that is the subject of the motions
> because the state court can determine this issue in the pending
> litigation.

The court subsequently ordered that it was "abstaining from ruling on

[Ronning's]" Motion to Determine" the rightful possessor of the chattel. The court

further ordered that "the parties may proceed under applicable non-bankruptcy

law in the pending litigation in the Superior Court of Washington to resolve who is

the legal owner of the dog and to enforce any resulting order or judgment."

Thus, the bankruptcy court unambiguously deferred to the equitable

jurisdiction of the superior court in this matter. The bankruptcy court's order

reflects that the court, in the interest of comity with State courts, abstained itself

from the determination of the rightful possessor of the chattel. Furthermore, the

order plainly reflects that the court, in lifting the stay, acquiesced to the superior

---

[9] Property and interests in property are creatures of state law. Barnhill v. Johnson, 503 U.S. 393, 398, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992) (citing McKenzie v. Irving Trust Co., 323 U.S. 365, 370, 65 S. Ct. 405, 89 L. Ed. 305 (1945); Butner v. United States, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)). See also Butner, 440 U.S. at 54 ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

court's jurisdiction to proceed in equity to not only "resolve who is the legal owner" of the chattel but also "enforce any resulting order or judgment."[10]

VanWinkle does not assert that the bankruptcy court's order limited the scope of its relief from stay to exclude costs arising from and associated with the superior court's determination of the possession of the chattel. VanWinkle does not provide any citation to decisional authority that might support that assertion. Moreover, we have no duty to search our decisional authority to find grounds to support the assertions of a party on appeal. See Ward v. LaMonico, 47 Wn. App. 373, 379, 735 P.2d 92 (1987) (citing Hackney v. Sunset Beach Invs., 31 Wn. App. 596, 644 P.2d 138 (1982); Riley v. Sturdevant, 12 Wn. App. 808, 532 P.2d 640 (1975)).[11] This is the duty of the appellant.[12]

The bankruptcy court's order reflects an unambiguous deferral to the superior court's equitable authority to determine—and meaningfully enforce its determination of—the rightful possessor of the chattel.

---

[10] The bankruptcy court's order further set forth that "[n]otwithstanding this order allowing the state court litigation to proceed on the issue of who owns the dog, [Ronning] may not attempt to collect any debt from [VanWinkle] that has been discharged in this bankruptcy case as [VanWinkle] no longer has personal liability for such debt."

VanWinkle asserts that the costs awarded to Ronning constituted monetary damages and therefore constituted a debt that she owed to Ronning. This argument misses the mark. As discussed herein, the judgment amount in question does not constitute a debt that VanWinkle owed to Ronning but, rather, constitutes costs associated with the preservation and replevy of the chattel, which were inherent to the superior court's equitable determination of the rightful possessor of the chattel, a determination from which the bankruptcy court abstained. To require otherwise would wrongfully "impair the legal operation and effect" of the superior court's judgment. See Callan, 2 Wn. App. at 449.

[11] Pro se litigants are held to the same standard as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

[12] Similarly, it is the duty of the appellant to establish that—if it is so—the superior court granted as costs any amounts that were actually discharged in the bankruptcy court. In the superior court, appellant made no attempt to do so.

B

We next address whether the superior court abused its discretion by awarding an equitable judgment amount to Ronning arising from the superior court's judgment and enforcement thereof. We conclude that it did not.

Superior courts in this state "have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art. IV, § 6. To that effect, the superior courts of Washington State "possess inherent equitable powers to fashion remedies as justice demands." Randy Reynolds & Assocs., Inc. v. Harmon, 193 Wn.2d 143, 162, 437 P.3d 677 (2019) (citing WASH CONST. art. IV, § 6). "Sitting in equity, a court 'may fashion broad remedies to do substantial justice to the parties and put an end to litigation.'" Hough v. Stockbridge, 150 Wn.2d 234, 236, 76 P.3d 216 (2003) (quoting Carpenter v. Folkerts, 29 Wn. App. 73, 78, 627 P.2d 559 (1981)).

> Because the [superior] court has broad discretionary authority to fashion equitable remedies, we review such remedies under the abuse of discretion standard. SAC Downtown Ltd. P'ship[ v. Kahn], 123 Wn.2d [197,] 204[, 867 P.2d 605 (1994)]. An abuse of discretion occurs when the [superior] court's decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006)).

Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 221, 242 P.3d 1 (2010).

"'A replevin action is essentially one to determine title to, or right of possession of, personal property, and not one to determine claims sounding in tort.'" Selland v. Douglas County, 4 Wn. App. 387, 389, 481 P.2d 573 (1971)

9

(quoting Apgar v. Great Am. Indem. Co., 171 Wash. 494, 498, 18 P.2d 46 (1933)).[13] "When equitable claims are brought, the focus remains on the equities involved between the parties." Vasquez v. Hawthorne, 145 Wn.2d 103, 107, 33 P.3d 735 (2001). Thus, "equitable claims must be analyzed under the specific facts presented in each case." Vasquez, 145 Wn.2d at 107-08.

Here, Ronning requested that the superior court determine the right of possession of the chattel and award a judgment in the amount of the cost of returning the chattel into her possession. Ronning testified that, while the chattel was in her care and custody, she had incurred several thousand dollars of emergency veterinary bills and boarding costs as well as travel costs incurred when attempting to retrieve the chattel after VanWinkle took it to Arizona. Ronning further testified that she had incurred over 200 hours of lost work hours and over $4,000 dollars in expenses in her attempt to retrieve the chattel.

The court determined as follows:

> I find, based on RCW 16.54, that this dog has been abandoned. I find, based on 16.54, that the person who has been providing the most care for this dog during this time period is Ms. Ronning. She is the true owner of the dog and she is entitled to the dog.
> Bella will be returned to Ms. Ronning forthwith; in addition to which, under the writ of replevin, which I am granting under RCW 7.64.035, Ms. Ronning, although she is not entitled to any breach of contract damages because she indicated that she did not plead it, so she doesn't get it, is entitled to the following damages that have resulted from this effort to obtain the dog.
> Number one: I find that she's entitled to any costs that she may have maintained in flying down to Arizona in an attempt to retrieve the dog. Number two: I find that she's entitled to the cost of

---

[13] Our replevin statute is set forth at chapter 7.64 RCW.

the emergency surgery and the boarding as damages, which comes to $4,989.

Immediately thereafter, in a colloquy with Ronning about her estimated flight costs to Arizona, the superior court inquired into Ronning's request for $4,000 in expenses, asking whether she had spent that sum

[t]o fly down there? Not to board, just the flight.
　　MS. RONNING: Right. I went down there three or four times. I had to go to court down here. I was instructed by the sheriff's department here to go find the dog.
　　THE COURT: That's not what I'm awarding you. I'm awarding you strictly the flights, plus the damages for boarding. I calculated damages as the cost of the medical costs and the boarding, ma'am.
　　MS. RONNING: Okay.
　　THE COURT: I'm only going to award you the flights. I'm not going to award you all that time that you're talking about.

The superior court reiterated that it would be issuing an order that included both the judgment of possession and a judgment amount

including, as I said, the costs that I've indicated the damages, $4,989, and the cost of the flights.
　　MS. RONNING: Okay. The ones that I already went down there or just the ones that I'm going to do?
　　THE COURT: The cost of the flights that you've already expended.

In its subsequent written order, the superior court indicated that it was

ruling in favor of Ms. Ronning for the following damages:
　　1. $4,989 for veterinary bills and boarding costs associated with the Brittany Spaniel dog, known as Bella, and
　　2. $356 for Ms. Ronning's previous flight to Arizona in her attempt to retrieve the Brittany Spaniel dog, known as Bella.

The superior court did not abuse its discretion in balancing the equities between Ronning and VanWinkle. In ruling in favor of Ronning, the court strictly limited Ronning's judgment amount to "the flights, plus the damages for boarding.

11

I calculated damages as the cost of the medical costs and the boarding." These issues arose directly from the preservation and disposition of the chattel into Ronning's possession.

At the same time, the court declined the remainder of Ronning's requests for relief. The court declined Ronning's requests for $4,000 in expenses, the time that she allegedly lost as a result of attempting to gain possession of the chattel, and the cost of an airplane flight that she was planning on undertaking. In doing so, the superior court manifested its awareness of the limits of the bankruptcy court order. The court also determined that Ronning was not entitled to any breach of contact damages.

In so doing, the superior court exercised its broad equitable authority in determining that, inseparable from its judgment determining the rightful possessor of the chattel, was a judgment awarding costs associated with the preservation and disposition of the chattel into Ronning's possession.[14] Given the superior court's "broad discretionary power to fashion equitable remedies," SAC Downtown Ltd. P'ship, 123 Wn.2d at 204, the court did not err in awarding these costs.[15]

---

[14] Because these costs arose from the determination of the rightful possessor of the chattel, the judgment awarding these costs was proper regardless of when the costs awarded were incurred. Indeed, absent a judgment amount reflecting the cost to preserve and replevy the chattel into the possession of its rightful possessor, the superior court's order would have been meaningless. To do otherwise would "impair the legal operation and effect of so formal a document." See Callan, 2 Wn. App. at 449.

[15] Ronning requests that this court impose sanctions against VanWinkle pursuant to RAP 18.9(a) and 18.9(c)(2)(3). We decline to do so.

Affirmed.

Dwyer, J.

WE CONCUR:

Coburn, J.     Hazel, ACJ